Caroline E. STRICKLAND, Plaintiff,

Arthur Charlton and Joyce Healy,
Third–Party Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 96–88 L.

United States Court of Federal Claims.

Oct. 9, 1998.

42

Graeme H. Strickland, Jr., Lake Oswego, Oregon, for plaintiff.

Jerome C. Muys, Washington, D.C., for third-party plaintiffs.

Kristine S. Tardiff, United States Department of Justice, Washington, D.C., for defendant.

## OPINION & ORDER

HODGES, Judge.

### OVERVIEW

The United States began setting aside land in the late 1800's for national parks and forests. Because some who lived in those areas became concerned about the effect of being surrounded by such reservations, Congress agreed to trade other government lands for their property. The Forest Management Act of 1897 provided that these settlers or owners could relinquish their lands to the Government and select "vacant land open to settlement not exceeding in area the tract covered by his claim or patent."[1]

Many owners delivered deeds to the United States pursuant to the Act of 1897, including plaintiffs' ancestor. For one reason or another, some of these land swaps were not completed. The deeds were delivered and recorded, but the Government did not give the owners replacement lands before the statute was repealed in 1905.[2] This created legal and political problems for Congress, and confusion among local land offices. Those problems led to the Act of 1922.[3]

The Act of 1922 restored the settlers' right to obtain comparable land for that relinquished, and added authority in the local land offices to quitclaim the Government's interest in relinquished lands if the parties could not agree on a fair exchange. If in lieu selections had not been made by the land owner or otherwise the process had not been completed, the United States could reconvey the relinquished property. The authority was to expire in three years. The goal of this law was to close the issue of in lieu land exchanges.

Section 6 of the Act of 1930 reopened the in lieu land issue, but its meaning and intent otherwise is obscure.[4] It provided for the reconveyance of land to an owner who had relinquished property under the 1897 Act "[if] the application in connection with which the conveyance was made is thereafter withdrawn or rejected . . . ." The statute was not interpreted either by the Judiciary or by the Executive, but one of its effects was to create a market in rights of reconveyance for investors and speculators. This set the stage for the Act of 1960, The Sisk Act.[5]

The Sisk Act was another effort by Congress to bring the issue of in lieu lands to a close. Its intent was to end the possibility of any land being reconveyed to persons who had relinquished property under the 1897 Act, but to provide alternative relief for such persons. The Act of 1960 repealed the Act of 1922 and Section 6 of the Act of 1930. It authorized payments to owners of relinquished land who would lose any right to a reconveyance that remained under the Act, provided they filed a claim within a statutory period. In one more attempt to close the door on this issue forever, the Act provided that all lands covered by the Act for which payment was made, or *for which payment could have been made* by a land owner, automatically became a part of the national forest, national park, or other area that surrounded such property. Questions evidently

1. Act of June 4, 1897, 30 Stat. 11 (1897).

2. Act of March 3, 1905, 33 Stat. 1264 (1905).

3. Act of September 22, 1922, Pub.L. No. 67–339, 42 Stat. 1017 (1922).

4. Act of April 28, 1930, Pub.L. No. 71–174, 46 Stat. 257 (1930).

5. Act of July 6, 1960, Pub.L. No. 86–595, 74 Stat. 334 (1960) (popularly known as the "Sisk Act").

remained because Congress acted again in 1993.

The Western Lands Dispute Act of 1993 states that its purpose is "to resolve the status of certain lands relinquished to the United States under the Act of June 4, 1897. . . ."[6] A key section of the law provides that such nationally significant lands *"not previously vested* in the United States is hereby vested and confirmed in the United States." (emphasis added). The 1960 Sisk Act by its terms is all-encompassing with regard to nationally significant lands, so it is not clear what types of lands remained to be captured by the 1993 Act; i.e., what lands were "not previously vested in the United States." The 1993 Act did not repeal the Sisk Act, but in fact embraced it. *See* Western Lands Dispute Act of 1993 § 3.

The issue of whether plaintiffs' land is covered by the 1993 Act or "previously vested" under the Sisk Act is important because the statute of limitations under the Sisk Act and the time limit on this court's takings jurisdiction both have expired. If plaintiffs' property is affected by the 1993 Act, their action here is timely.[7]

At the latest, plaintiffs' property was taken by the Sisk Act in 1960. Their land was located in a nationally significant area then, and whoever else the Act was intended to reach, clearly it applied to these plaintiffs. Plaintiffs lost their right to a reconveyance or an in lieu selection then. For that reason, we must dismiss this case for lack of jurisdiction.

## HISTORICAL BACKGROUND

M.C. Strickland purchased plaintiffs' property at a tax sale in 1901. After receiving the deed to the property, M.C. Strickland and Mary Helen Strickland quitclaimed the property to the United States pursuant to the Act of June 4, 1897. Both the quitclaim deed and the tax deed were recorded in Clackamas County, Oregon in 1904.[8] The 1897 Act permitted settlers and owners of patented land and unperfected bona fide claims located in public forest reservations to relinquish the land to the Government. In exchange, they could select "vacant land open to settlement not exceeding in area the tract covered by his claim or patent." This created what has become known as the "Forest Lieu Selection Program." The rules and regulations governing this program required plaintiffs to submit an application to the local land office describing the tract of land conveyed to the United States, the lieu tract selected by plaintiffs, and "an abstract of title, duly authenticated, showing chain of title from the Government back again to the United States."[9] Plaintiffs did not submit an application.

Congress repealed the 1897 Act in 1905 due to "gross abuses and frauds in wholesale exchanges of denuded lands in forest reserves for the most heavily timbered lands outside." *J.A. Allison and Mark L. Johnson, Selectors, by Ted E. Collins, Substitute Attorney in Fact,* 58 L.D. 227 (Dec. 4, 1942). The 1905 Act repealed earlier acts "so far as they provide for the relinquishment, selection, and patenting of lands in lieu of tracts covered by an unperfected bona fide claim or patent within a forest reserve. . . ." Act of 1905. The Act included a provision preserving contracts for lieu land entered into prior to the 1905 Act. It also preserved the rights of individuals who had filed an application with the local land office. No provision was made in the 1905 Act for "cases where lands within forest reserves may have been reconveyed to the United States, but no selections made in lieu thereof, or where such selec-

---

6. Western Lands Dispute Act of July 2, 1993, Pub.L. No. 103–48, 107 Stat. 234 (1993).

7. "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The statute of limitations is jurisdictional. *See e.g. Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990).

8. Neither party has raised an issue concerning the chain of title after 1901, so we do not address that point. Apparently plaintiffs obtained the land by inheritance or intestate succession from the original owner. For convenience, the term "plaintiffs" herein includes their ancestor(s) or other predecessor(s) in title if applicable.

9. Circular, Rules and Regulations Governing Forest Reserves Established Under Section 24, Act of March 3, 1891 (24 L.D. 589).

tions if made were finally rejected and canceled prior to March 3, 1905." *See* Circular, dated May 16, 1905 (33 L.D. 558, 559).

The United States Senate passed a resolution in 1906 directing the Secretary of the Interior to provide it with the names of persons who had relinquished land to the Government, but who had failed to select lieu lands prior to the repeal of the 1897 Act. 40 *Cong. Rec.* 3947 (1906). The Secretary instructed the United States Land Offices to post instructions in their offices requiring that individuals who had relinquished land to the Government under the 1897 Act come forward and describe the land that had been conveyed. The Secretary of the Interior compiled a list of names and submitted it to the Senate in November 1906. Plaintiffs' names do not appear on the list.

The 1905 repeal caused problems for owners who had relinquished property to the United States but had not received lieu land. This prompted Congress to pass the 1922 Act. This Act provided that persons who had not obtained their lieu selections prior to the 1905 Act could transfer to the Secretary of the Interior and the Secretary of Agriculture such lands "as are desirable for national-forest purposes, which lands shall thereupon become parts of the nearest national forest. . . ." Act of 1922 § 1. In exchange, the Secretary was authorized to issue a patent for lieu property selected by the applicant or allow the grantor to remove timber of equal value from national forest property. If an exchange could not be made, the Commissioner of the General Land Office was permitted to quitclaim title to the relinquished land back to the applicant, unless the property was within a forest reserve. In that case another parcel of land would be selected. Applications for lieu selections were to be filed in the General Land Office within three

years after September 22, 1922. Plaintiffs did not apply for a selection under the 1922 Act.

Then Congress passed the Act of 1930. This authorized and directed the Government to reconvey lands previously quitclaimed to the United States pursuant to the 1897 Act, if no lieu property had been selected. More than 27,000 acres of land were reconveyed under this Act,[10] but plaintiffs could not or did not participate.

Congress became concerned that "public lands of the United States were being reconveyed under the 1930 Act in "what the public press, conservation interests and others regarded as being virtually a give-away of public resources approaching a scandal." 1960 U.S.C.C.A.N. at 2744. This concern led to passage of the Sisk Act.

Congress passed the Sisk Act in 1960.[11] That law provided payment for landowners who had conveyed property under the 1897 Act and had not made a lieu selection or received the remedies provided in the 1922 and 1930 Acts. It stated in part:

> The Secretary of the Interior shall certify to the General Accounting Office for audit the claim of any person who relinquished or conveyed lands to the United States as a basis for a lieu selection in accordance with the provisions of the fifteenth paragraph under the heading "Surveying the Public Lands" in the Act of June 4, 1897 . . . and who has not heretofore received his lieu selection, a reconveyance of his lands, or authority to cut and remove timber, as provided by law, and there shall be paid to each such person whose claim is found to be valid the sum of $1.25 per acre for the lands conveyed by him to the United States . . . [and][n]o person shall receive, or be entitled to receive, payment

---

10. Payments for Lands Heretofore Conveyed to the United States as a Basis for Lieu Selections from the Public Domain, 1959: Hearing on H.R. 9142 Before the Subcomm. on Public Lands of the Committee on Interior and Insular Affairs, 86th Cong. 20 (1959) (Statement of Harold R. Hochmuth, Land Staff Officer, Bureau of Land Management).

11. Prior to the 1960 Act, the 1955 Act required individuals who had relinquished land to the

United States pursuant to the 1897 Act to record their interest with the Department of the Interior within 2 years of the 1955 Act. Claims not presented within 2 years were not accepted "by the Secretary of the Interior for recordation or as a basis for the acquisition of lands." Act of August 5, 1955, Pub.L. No. 84–247, 69 Stat. 534, 535 (1955). Plaintiffs did not record their interest with the Department of the Interior.

under this Act except upon demand therefor made in writing to the Secretary ... within one year from the date of this Act.

\* \* \* \*

Sec. 4. Any land for which the United States makes payment under section 1 of this Act, or any land for which it might make payment thereunder upon application by the proper party, but for which no demand is made, shall ... be a part of the national forest, national park, or other area within the boundaries of which it is embraced, shall be administered as a part thereof, and shall be subject to the laws, rules, and regulations applicable to land set apart and reserved from the public domain in that national forest, national park, or other area.

Sisk Act §§ 1, 4. The Sisk Act repealed the 1922 Act and made section 6 of the 1930 Act inapplicable to conveyances covered by the 1960 Act.[12] The Secretary of the Interior published notice of the Act in the Federal Register. Plaintiffs did not apply for payment under the Sisk Act. Problems remained, apparently, because Congress acted again more than thirty years later.

The Western Lands Dispute Act of 1993 was to resolve the status of certain lands relinquished to the United States under the Act of June 4, 1897. The Secretaries of Interior and Agriculture would prepare lists of base lands relinquished to the United States under the 1897 Act, for which no lieu selection or other rights were exercised.[13] Western Lands Dispute Act of 1993 § 2. Section 2(a) authorized the United States to issue quitclaims of the base lands to the listed owner. However, during preparation of the initial list, the Secretary was to:

(c) [I]dentify those listed lands which are located wholly or partially within any conservation system unit and all other listed lands which Congress has designated for

specific management or which the Secretary concerned decides, in the concerned Secretary's sole discretion, should be retained in order to meet public, resource protection, or administrative needs....

(2) The provisions of subsection (a) shall not apply to any lands identified by the Secretary concerned pursuant to paragraph (1). The Secretary concerned shall not include any such lands on any list prepared pursuant to subsection

(d). Subject to valid existing rights arising from factors other than those described in subsection (b)(1), any right, title, and interest in and to lands identified pursuant to paragraph (1) and not previously vested in the United States is hereby vested and confirmed in the United States.

(3) In the same manner as the initial list was published and distributed pursuant to subsection (b)(2), the Secretary concerned shall publish and distribute an identification of all lands in which right, title, and interest is vested and confirmed in the United States by paragraph (2).

*Id.* The Act provides that "a party claiming right, title, or interest in or to land vested in the United States by section 2(c)(2) of this Act may file in the United States Claims Court a claim against the United States seeking compensation based on such vesting." *Id.* at § 3. All claims under the 1993 Act were required to be brought within one year after publication of the final list as provided by section 2(d). The final list was published in the Federal Register in December 1995.

Plaintiffs filed in this court 36 years after the Sisk Act, but within the six year statute of limitations for a taking and within the one year statute of limitations established by the Western Lands Dispute Act. Plaintiffs' claim is timely if their land vested pursuant to the 1993 Act. They argue that the land did not vest until 1995 when the final list appeared in

**12.** Section 6 of the Act of 1930 stated that "where a conveyance of land has been made or may hereafter be made to the United States in connection with an application for amendment of a patented entry or entries, for an exchange of lands, or for any other purpose, and the application in connection with which the conveyance was made is thereafter withdrawn or rejected, the Commissioner of the General Land Office is

hereby authorized and directed, if the deed of conveyance has been recorded, to execute a quitclaim deed to the conveyed land to the party or parties entitled thereto."

**13.** Base lands are those lands that were relinquished to the United States by individuals pursuant to the 1897 Forest Lieu Selection Program.

the Federal Register. Alternatively, plaintiffs argue that the 1960 Act is unconstitutional.

## DISCUSSION

Plaintiffs argue that the Sisk Act of 1960 did not vest title to their property in the United States because they did not have any "rights" to a lieu selection under the Sisk Act of 1960. While they had relinquished land to the United States under the Forest Lieu Selection Program, they did not file the required application. As plaintiffs view it, "the only parties with rights to lieu selections in 1960 were those who had filed lieu selection applications with the Secretary before the 1897 Act was repealed...." Therefore, only those landowners were affected by the Sisk Act.

A court must consider first the language of an Act to determine if it "has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statue as a whole." *Id.*

The Sisk Act provides that parties who had relinquished land to the United States but who had "not heretofore received a lieu selection, a reconveyance of the lands, or authority to cut and remove timber ... shall be paid ... [if the] claim is found to be valid the sum of $1.25 ... with interest" for the lands conveyed to the United States. Interest ran from the date of the application for lieu selection, for reconveyance, for authority to cut and remove timber, or *"if no such application has been made,* from the date of this Act." Sisk Act § 1 (emphasis added). Thus, Section 1 of the Sisk Act compensates individuals who filed applications with the Secretary as well as those who did not.

Plaintiffs argue that Section 2 supports their position that their land was not effected by the Sisk Act. Section 2 of the Act informs individuals of their rights with regard to

payment under the Act. Subsection (a) provides that "[t]he right to receive payment under this Act shall not be assignable." This subsection prohibited claimants from assigning their right of compensation to others; it did not affect individuals who relinquished land to the Government and had the right to be paid. Subsection (b) defines "person[s] who conveyed lands to the United States" for purposes of providing payment under the Act. It did not limit the Act to individuals who had filed an application with the Secretary. Plaintiffs conveyed land to the United States under the 1897 program. The fact that they never filed the required application did not preclude payment to them under the Sisk Act.

Congress vested title to relinquished lands in the United States by Section 4 of the Sisk Act. Section 4 states that land relinquished to the United States, "shall ... be a part of the national forest, national park, or other area within the boundaries of which it is embraced...." The Act requires that the land be administered as part of the national forest or park and subject to the laws and regulations "applicable to land set apart and reserved from the public domain in that national forest, national park, or other area." Sisk Act § 4. Plaintiffs' property is located in the Mount Hood National Forest.

Plaintiff contends that legislative history supports their argument that the Act of 1960 did not vest title to their property in the United States. We may rely on legislative history of an Act where the language of the Act is not conclusive on the issue or is ambiguous. *Weddel v. Secretary,* 23 F.3d 388, 391 (Fed.Cir.1994). While we do not consider the 1960 Act to be ambiguous, the legislative history supports the court's holding. The purpose of the 1960 Act as expressed in the House and Senate reports was:

(1) to provide compensation for land conveyed or relinquished to the United States during the years 1897–1905 under the act of June 4, 1897 ... in cases in which the lieu lands or other rights which the owners were entitled to receive under this 1897 Act and supplementary legislation have not already been given them; (2) to make inapplicable to the owners, their heirs and

assigns a later provision of law directing the Secretary of the Interior, upon request; to return the original lands; and (3) thus to correct defects in the law under which such parties are now laying claim to valuable lands within the national forests and parks and taking them out of federal ownership.

1960 U.S.C.C.A.N. at 2743. The 1960 Act provided payment to individuals who did not receive lieu land, "since [the 1897 Act] never intended that the conveyed or relinquished lands should be a donation to the Government. . . ." *Id.* at 4. The Department of the Interior supported the Sisk Act: "It is to the interest of the United States that the question of the title to the relinquished lands be settled, and that title be firmly vested in the United States for the better management of the national forests and the national parks." 1960 U.S.C.C.A.N. at 2752.

Plaintiffs believe the legislative history shows that "Congress proceeded on the erroneous premise that complete ownership of the unaccepted base lands was already in the Government, and . . . Rep. Sisk's principal objectives were to be achieved by repealing the Secretary's authority to issue quitclaim deeds under the 1930 Act and providing compensation to those owners who voluntarily sought it. . . ." We cannot grant relief based on plaintiffs' characterization of Congress' mistakes. In any event, the legislative history does not support plaintiffs' assertion.

■ Regardless of whether plaintiffs filed the required application under the Act of 1897, the United States took full legal and equitable title to plaintiffs' property no later than 1960. When the Government extinguishes a person's right to exclude others by permanently occupying property, a per se taking occurs. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). The Government concedes that it took plaintiffs' property pursuant to the 1960 Sisk Act.[14]

■ Due process must be afforded a takings claimant. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). According to plaintiffs, the 1960 act is unconstitutional because it provided no notice to plaintiffs that their property became part of a National Forest and did not provide them with just compensation.

■ The Secretary of the Interior issued a notice entitled "Claims for Payment for Lands Conveyed to United States as a Basis for Lieu Selections" following enactment of the Sisk Act. The notice, published in the Federal Register on September 1, 1960 provided in part that,

> Notice is hereby given that claimants under Public Law 86–596 (74 Stat. 334) approved July 6, 1960, in order to receive the payment prescribed therein, must make demand therefore in writing to the Secretary of the Interior or to the Director, Bureau of Land Management, Washington 25. D.C., within one year from July 6, 1960.

F.R. Doc. 60–8120 (Sept. 1, 1960). Publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507. While the notice did not quote directly the language of the 1960 Act, it provided reference to the Act. The words "prescribed therein" in reference to the 1960 Act presumes that an individual who qualified for compensation would review its contents. Prior to enactment of the Sisk Act there were public hearings at which individuals expected to be affected by the Act were permitted to testify and submit documents for the record. All individuals who had relinquished land under the Forest Lieu Selection Program were given the opportunity to par-

---

14. Plaintiffs argue that the subject property could not have vested in the Government without their having filed the required application with the Secretary. Defendant responds that the United States acquired an ownership interest in

the property in 1904 when the land was quitclaimed to the United States. We see no need to address this argument because in any event the United States could exercise its authority to take plaintiffs' property for a public purpose in 1960.

ticipate and to be heard. Plaintiffs received sufficient notice.

■ Plaintiffs also complain that $1.25 an acre for their property was not just compensation. Where a remedy under the Tucker Act remains available, Congress' decision to set compensation under an Act does not render it unconstitutional. *See Blanchette v. Connecticut General Ins. Co.*, 419 U.S. 102, 149, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).[15] If the Act is silent, the issue is whether it "sufficiently evidences a Congressional intention to withdraw a remedy that would otherwise exist." *In the Matter of Penn Central Transp. Co.*, 384 F.Supp. 895, 939 (1974).

■ The Sisk Act did not preclude plaintiffs from bringing a taking action in the Court of Federal Claims. Plaintiffs could have demanded payment within one year from July 6, 1960 or filed suit in this court within six years thereafter. If plaintiffs filed suit in 1963 and were denied the opportunity to litigate the just compensation issue, this might be a different case. But they never sought review. Neither the statute nor the legislative history suggests that Congress deprived plaintiffs of their rights to just compensation. Where Congress has not expressly withdrawn Tucker Act jurisdiction, the courts must find that it is still a valid remedy under the law. *Id.* (*see also Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)).

If the Western Lands Dispute Act vested title to the relinquished property in the United States, plaintiffs' claim for relief is timely. Congress enacted the Western Lands Dispute Act in 1993. In the 1993 Act, Congress restated the effect of prior acts, specifically discussing the Act of 1960. Section 1 entitled "Findings and Purpose" stated in relevant part that the Act of 1960

[E]stablished a procedure to compensate persons affected by the [1897, 1900, 1901, 1905, 1922, and 1930 Acts] who had not received appropriate relief under prior legislation. However no payments of such compensation were made under that Act.

(5) Section 4 ... provided that lands with respect to which compensation under that Act *were or could have been made*, and not previously disposed of by the United States, shall be part of any national forest, national park, or other area withdrawn from the public domain wherein they are located.

Western Lands Dispute Act of 1993 § 1 (emphasis added). Section 2 of the Act quitclaims all base lands back to the listed owner.[16] The Secretaries of Agriculture and Interior prepared an initial list of all base lands that were relinquished to the United States under the 1897 Act, and to which selection or other rights under that Act were not exercised. The initial lists were based on knowledge obtained by the Secretaries and were to be published for public review. Individuals whose parcels of land were not listed could request that they be placed on the lists.

Section 2(c) requires that the Secretary, "identify those listed lands which are located wholly or partially within any conservation system unit and all other listed lands which Congress has designated for specific management or which the Secretary concerned decides ... should be retained in order to meet public, resource protection, or administrative needs."[17] The Section states that subsection (a), which is the provision quitclaiming lands back to the listed owner, does not apply to lands located in a conservation system unit. In fact, "any right, title and interest in and to

---

15. Pursuant to the Tucker Act, the Court of Federal Claims possesses jurisdiction to entertain suits based on money claims against the United States, not sounding in Tort, and which are founded upon the Constitution, an Act of Congress, an Executive Order, a regulation of an Executive Department, or any express or implied-in-fact contract with the United States. 28 U.S.C. § 1491.

16. Listed owner shall also include: entryman, his heirs, devisees, successors, and assigns.

17. Conservation system unit includes "any unit of the National Park System, National Wildlife Refuge System, National Wild and Scenic Rivers System, National Trials System, or National Wilderness Preservation System, a national forest monument, or a national conservation area, a national recreation area, or any lands being studied for possible designation as part of such a system or unit." Western Lands Dispute Act of 1993 § 2.

lands identified [as a conservation system unit] and *not previously vested* in the United States is hereby vested and confirmed in the United States." *Id.* at § 2 (emphasis added).

Plaintiffs concede that the land their ancestors relinquished pursuant to the 1897 Act is located within a Conservation System Unit known as the Bull Run Watershed, which supplies water to the city of Portland, Oregon.[18] They do not agree that the land "previously vested."

After determining which lands vested pursuant to the 1993 Act or previously vested in the United States, the Secretary "publish[ed] and distribute[d] an identification of all lands in which right, title, and interest is vested and confirmed in the United States by paragraph 2." Paragraph 2 is the provision denying those listed owners a quitclaim for lands located in Conservation Systems. Plaintiffs' property was placed on the Section 2(c)(3) list as vested in the United States. Plaintiffs assert that because their land was listed on the 2(c)(3) list, it could not have vested in 1960. According to plaintiffs the language of subsection (c)(3) requires that only those lands that vested pursuant to the 1993 Act be listed.

Section 2(c) requires the compilation of a single list of nationally significant lands. The reference in paragraph (3) to vesting must be read to include all lands that vested under the 1960 Act, as well as lands that vested under the 1993 Act. There is no evidence to suggest separate lists were required.

 As Congress did not repeal the Act of 1960, it must be read consistently with the 1993 Act. Repeals by implication are disfavored. *Morton,* 417 U.S. at 549, 94 S.Ct. 2474. Where statutes are "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551, 94 S.Ct. 2474. Section 3 of the 1993 Act specifically validates existing rights pursuant to the 1960 Act: "Nothing in this [1993] Act shall be construed as diminishing any existing right, title or inter-

est of the United States in any lands covered by section 2(c), including but not limited to any such right, title, or interest established by the Act of July 6, 1960.…" The 1960 Act vested title in the United States to all lands located within a Conservation System Unit.

### CONCLUSION

Plaintiffs' property vested in the United States in 1960. The statute of limitations bars suit against the Government based on its taking of the subject property. While the 1993 Act offered relief to individuals owning property outside of a Conservation System, that Act does not apply here. Defendant's motion for summary judgment is GRANTED. The Clerk will dismiss plaintiffs' complaint. No costs.

---

18. Plaintiffs concede that Section 2(a) of the Western Lands Dispute Act, which quitclaims

property back to the listed owner is inapplicable to this case.