Edward D. NEUHOFF, Individually, and Charles E. Cord and Edward D. Neuhoff, Co-Executors of the Estate of E. L. Cord, Deceased, Appellants,

v.

The SECRETARY OF the INTERIOR OF the UNITED STATES of America, Appellee.

No. 75–3284.

United States Court of Appeals, Ninth Circuit.

July 17, 1978.

to deny and rebut the information set forth in it.

Milo V. Olson (argued), Los Angeles, Cal., for appellants.

Charles E. Biblowit (argued), Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE,* DUNIWAY and WRIGHT, Circuit Judges.

TUTTLE, Circuit Judge:

◼ Arguments still continue over the final entitlement to lands granted American railroads more than a century and a quarter ago. This appeal challenges the district court's affirmance of a decision of the Secretary of the Interior denying appellants' claims to certain lands which they say they are entitled to as holders of powers of attorney sold by the Santa Fe Railroad. The powers of attorney were sold by the Railroad to the appellants' predecessors in interest and purported to enable the buyers of the powers to select lieu lands in the name of the Railroad and to convey those lands to buyers of their choice. The power of attorney device was used because lieu selection rights are personal and non-assignable. *Udall v. Battle Mountain Company*, 385 F.2d 90 (9th Cir. 1967).

The facts are stipulated. In 1866 the federal government granted American railroads certain lands in exchange for, inter alia, rate concessions for government freight. In 1897 President Cleveland set aside millions of acres of western lands as forest reserves, incorporating some of the lands previously granted Santa Fe's predecessor. Strict limitations as to the use and access to even the privately-owned, settled tracts were imposed by the President's forest reserve proclamations, subjecting enjoyment of small tracts within such a forest reserve to serious limitations. Congress, thereupon, enacted what is known as the Forest Lieu Exchange Act of 1897, 30 Stat. 36, which permitted anyone claiming lands within the forest reserves to reconvey such lands to the United States in exchange for the right to select an equivalent acreage in otherwise unoccupied areas of the public domain.

Santa Fe, which patented substantial areas of land now within the forest reserves, took advantage of the Act and in 1902 contracted with the Secretary of the Interior to reconvey those lands. Accordingly, Santa Fe reconveyed certain lands to the United States between 1904 and 1911 and

* Honorable Elbert P. Tuttle, Senior Circuit Judge, Fifth Circuit, sitting by designation.

received in return the right to select other lands. The railroad sold to the present claimants'-appellants' predecessors in interest assignments of some of these rights. In the meantime, Congress has directed the ascertainment of the dollar value of such lands and authorized payment of such value to claimants entitled to them. The lands in issue here have been valued at $275 per acre.

In 1940, as a measure to alleviate the economic hardship on railroads from the special freight concessions required under the 1866 law, Congress enacted the Transportation Act of 1940, 54 Stat. 954, 49 U.S.C. § 65(b). This Act provided that any railroad that had received a grant in 1866 and which was thus limited in its charges for the carrying of Government freight could be freed from such limitations by releasing "any claim it may have against the United States to lands, interests in land, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted or which it is claimed should have been granted." Pursuant to the 1940 Act, Santa Fe executed a release of all claims in United States lands, except such lands as it had then patented.

Thus, as will be seen, the claimants here assert the right to exercise Santa Fe's claim to "lieu" lands which the Secretary claims Santa Fe surrendered by its release to the United States. The claimants do not contend that they have any greater rights than would be possessed by Santa Fe. The question thus is whether by its release, Santa Fe gave up its "lieu" rights.

As we have outlined the facts, it certainly appears at first blush as if Santa Fe has given up any claim it may have to unpatented lands. This, of course, is what the Secretary contends in this litigation. The district court found in favor of the Secretary, and we conclude that a proper interpretation of the relevant statutes requires us to reach the same result.

There is no dispute but that Santa Fe owned substantial areas of land at the time of the enactment of the Forest Lieu Exchange Act of 1897, which in material part provided as follows:

That in cases in which a tract covered by an unperfected bona fide claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the Government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected: *Provided further*, That in cases of unperfected claims the requirements of the laws respecting settlement, residence, improvements, and so forth, are complied with on the new claims, credit being allowed for the time spent on the relinquished claims.

Act of June 4, 1897, 30 Stat. 36.

It is further undisputed that pursuant to the provisions of that Act, Santa Fe conveyed lands which it had patented to the United States pursuant to its contract with the Secretary giving it the right to make selections in lieu of the tracts so conveyed.

Section 321(b) of the Transportation Act of 1940, 54 Stat. 954, 49 U.S.C.A. § 65(b), provides:

If any carrier by railroad furnishing such transportation, or any predecessor in interest, shall have received a grant of lands from the United States to aid in the construction of any part of the railroad operated by it, the provisions of law with respect to compensation for such transportation shall continue to apply to such transportation as though subsection (a) of this section had not been enacted until such carrier shall file with the Secretary of the Interior, in the form and manner prescribed by him, a release of any claim it may have against the United States to lands, interests in land, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted to such carrier or any such prede-

cessor in interest under any grant to such carrier or such predecessor in interest as aforesaid. Such release· must be filed within one year from [September 18, 1940]. Nothing in this section shall be construed as requiring any such carrier to reconvey to the United States lands which have been heretofore patented or certified to it, or to prevent the issuance of patents confirming the title to such lands as the Secretary of the Interior shall find have been heretofore sold by any such carrier to an innocent purchaser for value or as preventing the issuance of patents to lands listed or selected by such carrier, which listing or selection has heretofore been fully and finally approved by the Secretary of the Interior to the extent that the issuance of such patents may be authorized by law.

Following the enactment of this statute, Santa Fe agreed to

relinquish, . . . remise . . . and quitclaim . . . to the United States of America any and all claims of whatever description to lands, interests therein, compensation or reimbursement therefor on account of lands or interests granted, claimed to have been granted, or claimed should have been granted by any act of the Congress to Santa Fe Pacific Railroad Company or to any predecessor in interest in aid of the construction of any portion of its railroad.

The release stated that it did not embrace lands sold by the company to innocent purchasers for value prior to September 18, 1940, lands embraced in selections made by the company and approved by the Secretary of the Interior prior to September 18, 1940, or lands which have been patented or certified to the company or any predecessor in interest in aid of the construction of its railroad.

The principal thrust of appellants' argument is that the interests which Santa Fe released under the terms of the Transportation Act were not lands received "from the United States to aid in the construction of any part of the railroad operated by it," but lands which Santa Fe obtained by contract,

pursuant to the Forest Lieu Exchange Act of 1897. They claim that the Forest Lieu Exchange Act was not related to, or in any way connected with, the original grants of 1866. As did the trial court, we consider this to be unimportant. The Forest Lieu Exchange Act presented an option to any claimant of lands within the limits of a public forest reservation (including railroads whose lands had been acquired pursuant to a federal grant in 1866) to surrender such lands and obtain "lieu rights" in exchange. The Transportation Act merely identifies those railroads which are entitled to benefit from it as "any carrier by railroad furnishing such transportation, or any predecessor in interest, which shall have received a grant of lands from the United States to aid in the construction of any part of the railroad operated by it." Clearly, this description covered the Santa Fe Railroad. It thus could qualify for the benefits provided by the Act if it executed "a release of any claim it may have against the United States to . . . compensation, or reimbursement on account of lands or interests in lands which have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid. . . . "

The claimants argue that the claims owned by Santa Fe arising under the Forest Lieu Exchange Act are not lands which were granted "as aforesaid," which they construe to mean lands granted "to aid in the construction of any part of the railroad."

The Supreme Court has construed the language of § 321(b) of the Transportation Act in a manner that completely answers the claimants' contention here. The Court in *Krug v. Santa Fe Pacific Ry.*, 329 U.S. 591, 67 S.Ct. 540, 91 L.Ed. 527 (1947), held that the "lieu rights" received by Santa Fe under a similar statute were received as "compensation or reimbursement" on account of lands which had been granted to the carrier to aid in the construction of the railroad. The Court there said:

The respondent argues the case here as though the 1940 Act applied only to claims for "lands under any grant." The language is not so narrow. It also required railroads to surrender claims for "*compensation, or reimbursement* on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted . . . under any grant." * * * This language in itself indicates a purpose of its draftsmen to utilize every term which could possibly be conceived to give the required release a scope so broad that it would put an end to future controversies, administrative difficulties, and claims growing out of land grants. Beyond a doubt, the words "compensation" and "reimbursement" as ordinarily understood would describe a payment to railroads in money or in kind for the surrender of lands previously acquired by them "under a grant." If they do not have this meaning, their use in the Act would have been hardly more than surplusage.

*Id.* at 596, 67 S.Ct. at 543 (emphasis in original).

Although appellants seek to distinguish *Krug* because the "lieu lands" involved in *Krug* were obtained under a different statute, this distinction is unimportant in the construction of the 1940 Act in view of our determination that the Forest Lieu Exchange Act is applicable to lands received by railroads for the construction of their lines. It is clear that, just as in *Krug*, the right to select lieu lands was plainly "compensation or reimbursement" for lands originally granted to aid in the construction of the railroad.

The claimants press the further contention that the Transportation Act did not require the surrender of "patented" lands, and since the Santa Fe release did not include "lands which had been patented or certified to the company or any predecessor in interest" the claimants' rights to lieu lands were not released, because these rights were received by Santa Fe in return for its surrender of patented lands. They cite, as persuasive but not controlling authority, *Santa Fe P. R.R. v. Cord*, 14 Ariz. 254, 482 P.2d 503, which holds that "considering the purpose of the Act, it only makes common sense that any claims arising out of lands which had already been patented are also excepted from the meaning of the Act."

We cannot accept this interpretation, because it is perfectly clear from the face of the Act that the only lands excepted from the release requirement in order for the railroad to become entitled to its benefits are lands which are in fact patented. There is no contention that these inchoate lieu rights are in fact patented lands. The fact that the rights were obtained in exchange for lands which the railroad had previously patented when it made the surrender pursuant to the 1897 Act does not change the character of the rights which the claimants press here.

The judgment is AFFIRMED.