**SANTA FE PACIFIC RAILROAD COMPANY, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5063.

United States Court of Appeals, Federal Circuit.

June 21, 2002.

Jerome C. Muys, Muys & Associates, P.C., of Washington, DC, argued for plaintiff-appellant.

Kristine S. Tardiff, Attorney, Department of Justice, of Concord, NH, argued for defendant-appellee. With her on the brief were John C. Cruden, Acting Assistant Attorney General; and David C. Shilton, Attorney, Environmental and Natural Resources Division, Department of Justice, of Washington, DC.

Before PAULINE NEWMAN, RADER, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Santa Fe Pacific Railroad Company ("Santa Fe") brought suit against the United States for the asserted taking of approximately 948 acres of land in Arizona, by virtue of enactment of the Resolution of Western Lands Dispute Act of July 2, 1993, Pub.L. No. 103–48, 107 Stat. 234 ("the 1993 Act"). The United States Court of Federal Claims entered summary judgment in favor of the United States, holding that Santa Fe had no property rights taken by the 1993 Act.[1] We affirm.

---

1. *Santa Fe Pacific Railroad Co. v. United*      *States,* 48 Fed. Cl. 520 (2001).

## BACKGROUND

The United States, to promote settlement of the southern and western regions of the nation, transferred large areas of public lands in connection with the construction of railroads. *See generally Krug v. Santa Fe Pacific Railroad Co.*, 329 U.S. 591, 592, 67 S.Ct. 540, 91 L.Ed. 527 (1947). The Act of July 27, 1866, ch. 278, 14 Stat. 292 ("the 1866 Act"), incorporated Santa Fe's predecessor, the Atlantic and Pacific Railroad Company ("the A & PR"), for the purpose of constructing a railroad from Springfield, Missouri to the Pacific Ocean, granted the A & PR title to a right of way 200 feet wide, and authorized grants of alternate, odd-numbered sections of land on either side of the right of way. In the event that any of this land were already occupied by homesteaders and settlers, A & PR was granted the right to select indemnity "lieu" lands in place of the occupied lands. 1866 Act, § 3. The total land granted to A & PR pursuant to the 1866 Act was approximately 11,917,000 acres patented to the railroad, plus approximately 1,400,000 acres in claims based on indemnity lieu rights. Department of the Interior press release of March 13, 1941, *reprinted in Hearings on H.R. 6156 before the House Committee on Interstate and Foreign Commerce*, 77th Cong., 2d Sess. 36–37 (1942). In accordance with the initial grant, A & PR and similarly established railways were required to carry government freight and personnel at reduced rates.

Several other statutes concerned railway and related acquisitions of lands. Relevant to this suit is the Act of June 4, 1897, enacted, in part, to provide for the management of the national forest system; included was the Forest Lieu Act, 30 Stat. 11, 36 ("the 1897 Act"), which offered to owners of land and homesteaders within the boundaries of a designated forest reserve the right to exchange their land for an equal area of available federal land outside of the forest reserve. This statute had the dual purposes of preserving government control of the land and natural resources within the forest reserves, and enabling those with land within the reserves to move to a more favorable and potentially less isolated location. *See Roughton v. Knight*, 219 U.S. 537, 546, 31 S.Ct. 297, 55 L.Ed. 326 (1911). Santa Fe was a landowner within forest reserves by virtue of its 1866 railway grant.

In accordance with the 1897 Act, on April 2, 1902, Santa Fe entered into an agreement with the Secretary of the Interior whereby Santa Fe agreed to convey designated sections of its 1866 patented land to the United States for inclusion in an expanded San Francisco Mountains Forest Reserve in Arizona, in exchange for forest lieu selection rights. Santa Fe contributed 507,358 acres, constituting all of its land within the expanded reserve. This land includes fifteen of the seventeen parcels on which Santa Fe's taking claim is based. Similarly, on July 7, 1902, Santa Fe entered into an agreement with the Secretary of the Interior to convey a total of 375,000 acres of Santa Fe's 1866 patented land situated in the Grand Canyon Forest Reserve in Arizona, for which Santa Fe was granted forest lieu selection rights. Included were two of the parcels on which Santa Fe's taking claim is based. Implementing these agreements, the Secretary instructed the General Land Office to "effect the exchange ... in conformity to the [1897 Act]." Deeds of conveyance to the United States of all of these properties were duly executed and recorded in county records; these conveyances occurred from 1902 to 1917. The basis of Santa Fe's taking claim is that certain forest lieu selection rights associated with the deeded parcels of land were never exercised.

Starting in 1922 and continuing until 1993, Congress enacted a series of "last

chance" statutes providing remedy for railroads that had relinquished granted lands but had not yet received lieu lands in exchange. *See Strickland v. United States*, 199 F.3d 1310, 1312–13 (Fed.Cir. 1999) (discussing history of the "last chance" statutes). The purpose of these enactments was to resolve the status of various lands located within national forests, parks, and other areas.

In 1940, in response to a serious decline in railroad revenue during the Great Depression, section 321 of the Transportation Act of 1940, 54 Stat. 898, 954–55 ("the 1940 Act") was enacted to provide relief from most of the obligation of land-grant railroads to carry government freight and personnel at reduced rates. To obtain this relief, the railroad was required to file

> a release of any claim it may have against the United States to lands, interests in lands, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid.

1940 Act, § 321(b). This release of claims relating to lands was subject to three qualifications; in relevant part:

> Nothing in this section shall be construed as requiring any such carrier to reconvey to the United States lands which have been heretofore patented or certified to it. . . .

*Id.* On December 18, 1940, Santa Fe filed the required release in accordance with the 1940 Act, with the following text:

> Santa Fe Pacific Railroad Company . . . relinquishes, remises and quitclaims to

the United States of America any and all claims of whatever description to lands, interests therein, compensation or reimbursement therefor on account of lands or interests granted, claimed to have been granted, or claimed should have been granted by any act of the Congress to Santa Fe Pacific Railroad Company or to any predecessor in interest in aid of the construction of any portion of its railroad.

The release recited certain qualifications, tracking the statute:

> This release does not embrace the rights of way or station grounds of this company, lands sold . . ., lands embraced in selections made by the company and approved by the Secretary of the Interior prior to September 18, 1940, or lands which have been patented or certified to the company or any predecessor in interest in aid of the construction of its railroad.

The release was accepted by the Secretary of the Interior as of March 1, 1941.

The 1993 Act required the Secretaries of the Interior and Agriculture to identify all of the parcels of land that the railroads had relinquished to the United States but for which "selection or other rights under [the 1897] Act or supplemental legislation were not realized or exercised." 1993 Act, § 2(b). The 1993 Act provided that the base lands were to be quitclaimed back to the original owners unless they were identified as "nationally significant lands." 1993 Act, § 2(a), (c). The seventeen parcels here at issue were identified as nationally significant lands. *Title to Forest Lieu Selection Lands*, 60 Fed.Reg. 66780, 66782 (Dec. 26, 1995). It was undisputed, for purposes of this summary judgment, that the lieu rights received by Santa Fe for these lands were not exercised.[2] Howev-

---

2. Santa Fe had sold some of its forest lieu selection rights to scrip dealers and other third persons, and for at least six of the parcels here at issue, Santa Fe had executed powers of attorney to select the lieu property.

er, because the base lands were designated as nationally significant, Santa Fe could not recover them. Section 3(a) of the 1993 Act authorizes owners of such lands to seek compensation in the Court of Federal Claims for legislative taking of this property.

Before the Court of Federal Claims, the taking claims arising from four of the seventeen parcels transferred by Santa Fe under the 1897 Act were dismissed by stipulation of the parties. As to the remaining claims, the court held that Santa Fe's release of December 18, 1940, accepted as of March 1, 1941, encompassed all of Santa Fe's interests in the property asserted to have been taken by the 1993 Act.

## DISCUSSION

■■■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment. However, summary disposition of questions of contractual intent, if reasonably disputed, requires that all justifiable factual inferences are drawn in favor of the non-movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The grant of summary judgment is subject to plenary review on appeal. *Strickland,* 199 F.3d at 1313.

The Court of Federal Claims held that Santa Fe had released any and all remaining interest in the parcels at issue, pursuant to its release under the 1940 Act. The court observed that the terms of the 1940 Act and the release executed by Santa Fe were "exceedingly broad," releasing not only all claims to lands "which have been granted, claimed to have been granted, or which it is claimed to [sic: should] have been granted," but also all claims to "interests in land, compensation or a reimbursement on account of lands." *Santa Fe,* 48 Fed. Cl. at 526. The court ruled that the 1940 Act and Santa Fe's release included release of the forest lieu selection rights that had been acquired by Santa Fe under the 1897 Act, and that no conditional ownership or other property interest remained in the base land. The court held, based on this release, that Santa Fe retained no residual interest that could be taken, under the 1993 Act, when the base land parcels were listed in 1995 as "nationally significant lands," whether or not the lieu rights had ever been exercised.

## A

■■, The position of Santa Fe is that its release pursuant to the 1940 Act did not affect its equitable interest in the underlying 1866 patented lands for which the exchange had never been completed under the 1897 Act. Santa Fe asserts that the 1897 Act related to national parks and forest reserves, not to the railroad land grants and lieu rights that were the subject of the 1940 Act and ensuing release. Santa Fe states that its base lands were only conditionally relinquished in 1902, and full title was not conveyed to the United States with the deeds to these lands, because the forest lieu selection rights were never exercised or released. Thus Santa Fe states that it continued to hold an equitable property interest in the base lands, and that this interest was taken in 1995, when return of the lands under the 1993 Act was denied.

"Scrip" is here defined as "a document or a right authorized by an Act of Congress, which entitles a person to acquire a designated number of public land acres in the United States." *Santa Fe,* 48 Fed. Cl. at 522, n. 3.

Santa Fe states that the release it executed pursuant to section 321(b) of the 1940 Act did not apply to transactions under the 1897 Act, because the 1897 Act was directed to forest preservation and not to railroad land grants. Santa Fe argues that section 321(b) itself limited the scope of the release to unsatisfied lieu and other claims under the original 1866 Act or supplemental acts dealing with railroad lands, such as were enacted in 1874 and 1904 to accommodate settlers in various western lands, but did not release any other claims.

The Court of Federal Claims relied on the Supreme Court's 1947 interpretation in *Krug v. Santa Fe* of section 321(b) of the 1940 Act. In *Krug* the Court was concerned with lieu selection rights received by Santa Fe under the Act of June 22, 1874,[3] 18 Stat. 194, and the Act of April 28, 1904,[4] 33 Stat. 556. The Court held that the purpose of the 1940 Act was "to give the required release a scope so broad that it would put an end to ... claims growing out of land grants." 329 U.S. at 597, 67 S.Ct. 540. The Court rejected Santa Fe's argument that the selection rights under the 1874 Act and 1904 Act were not covered by the 1940 release because they were not claims "on account of" or "under any grant" of lands, the Court stating:

> The language is not so narrow. It also required railroads to surrender claims for "compensation, or reimbursement on account of lands or interests in lands which have been granted, ·claimed to have been granted, or which it is claimed should have been granted ...

under any grant." (Italics supplied.) This language in itself indicates a purpose of its draftsmen to utilize every term which could possibly be conceived to give the required release a scope so broad that it would put an end to future controversies, administrative difficulties, and claims growing out of land grants. Beyond a doubt the words "compensation" and "reimbursement" as ordinarily understood would describe a payment to railroads in money or in kind for the surrender of lands previously acquired by them "under a grant." If they do not have this meaning, their use in the Act would have been hardly more than surplusage. And when viewed in the context of the historical controversies and claims under the land grants, the conclusion that the 1940 Act covers claims such as respondent's seems inescapable.

*Id.* at 597–98, 67 S.Ct. 540 (footnote omitted). The Court considered the legislative history of the 1940 Act and concluded that "Congress intended to bar any future claims by all accepting railroads which arose out of any or all of the land-grant acts, insofar as those claims arose from originally granted, indemnity or lieu lands." *Id.* at 598, 67 S.Ct. 540.

Santa Fe argues that *Krug* is distinguished, in that it is directed to and limited to an interpretation of the 1940 Act that encompasses only legislation specifically intended to facilitate the development of railroads, and does not include legislation to facilitate the national forest program.

---

3. The 1874 Act was enacted to relieve "the hardships of settlers whose filing or entry on public lands had been allowed by the General Land Office under the pre-emption or homestead laws subsequent to the time when the rights of a railroad company under a congressional grant attached to the granted land." *Santa Fe Pacific Railroad Co.,* 58 Interior Dec. 596, 598 (1944).

4. The 1904 Act was enacted to reimburse Santa Fe "for losses in the grant of July 27, 1866, occasioned by the inability of the United States to furnish good title to lands acquired from Mexico under the treaty of Guadalupe–Hidalgo in 1848 and the Gadsen purchase of 1853 which were occupied by settlers who had entered in good faith." *Santa Fe Pacific Railroad Co.,* 58 Interior Dec. 601, 605 (1944).

Santa Fe states that the Court of Federal Claims misread the 1940 Act because it failed to appreciate that the terms "grants" and "land grant acts" were customarily used interchangeably, and that because the 1897 Act was not expressly tied to any of the land grant acts by which Congress aided railroad construction, a claim under the 1897 Act could not be a claim "under any grant."

We agree with the Court of Federal Claims in its application of *Krug*. In *Krug* the Court held that Santa Fe's claims to lieu rights under the 1874 and 1904 Acts were released pursuant to the 1940 Act, even though these statutes were not explicitly mentioned in the legislative history of the 1940 Act. The Court found that these statutes "relate to a continuous stream of inter-related transactions and controversies, all basically stemming from one thing—the land grants." 329 U.S. at 598, 67 S.Ct. 540. The Court clearly ruled that claims arising from lieu land transactions arising from land grants were barred by release under the 1940 Act.

However, Santa Fe now argues that it is seeking compensation not for any taking of lieu rights, but for taking of its conditional or equitable interest in the underlying base land involved in the transfers under the 1897 Act. Santa Fe argues that the legislative history of section 321(b) of the 1940 Act and its subsequent application by the Department of the Interior over the ensuing thirty years demonstrate that the government's understanding was the same as that here presented by Santa Fe, and that the correct reading of the 1940 Act is to exclude property issues arising from the 1897 forest transactions from the release by Santa Fe under the 1940 Act. Santa Fe states that during consideration of various bills that were precursors to the 1940 Act, the Justice, Agriculture, and Interior Departments all recommended release conditions related to claims under original or supplemental land grants, but none mentioned the exchanges under the 1897 Act. Santa Fe also refers to certain Attorney General's preliminary proposals in 1939 as supporting its view of the limits of the 1940 Act, and contrasts these proposals with one made by the Forest Service that would have required the railroads to reconvey all unsold patented lands to the United States, a proposal that was rejected.

In *Neuhoff v. Secretary of the Interior*, 578 F.2d 810 (9th Cir.1978) the Ninth Circuit had rejected the Santa Fe position, on appeal from a decision of the Interior Department's Board of Land Appeals. The court held that the reasoning in *Krug* concerning the broad scope of the 1940 release applies to claims to forest lieu lands deriving from the 1897 Act. *Id.* at 814 ("[J]ust as in Krug, the right to select lieu lands [pursuant to the 1897 Act] was plainly 'compensation or reimbursement' for lands originally granted to aid in the construction of the railroad.") Santa Fe argues that *Neuhoff* was wrongly decided, also pointing out that it does not bind this court.

Santa Fe states that the Secretary of the Interior's construction of section 321(b) over the years after 1940, before and after the Court's decision in *Krug*, confirms that a less sweeping scope of the 1940 Act was well understood by those charged with its administration. Santa Fe refers to the Secretary's approval in 1941 of two of Santa Fe's forest lieu selections under the 1897 Act, filed in July 1940 but approved after Santa Fe's release had been accepted. The Department of the Interior also issued at least thirteen quitclaim deeds from 1955 to 1957, clearing title in favor of Santa Fe, or its attorneys-in-fact, of base lands for which forest lieu selection rights had not been exercised.

■ Santa Fe is correct that weight must be given to the contemporaneous interpretation of a statute by the agency administering it. However, by 1963 the Secretary of the Interior is described as questioning the agency's position, followed by a change in the position of the Bureau of Land Management. In 1973 the Interior Board of Land Appeals, affirming a 1970 decision of the Bureau of Land Management, held that Santa Fe had relinquished its 1897 forest lieu selection rights by the release pursuant to the 1940 Act. *E.L. Cord et al.*, 80 Interior Dec. 301 (1973). This decision was upheld by the Ninth Circuit in *Neuhoff.*

■ Santa Fe argues that this agency reversal, after over two decades of administration, was unexplained and erroneous. The government responds that the prior actions of the Department of the Interior were simply incorrect, and should not be considered. In fact, these actions must be given consideration. *See, e.g., Udall v. Tallman* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) (the actions of those charged with administering a statute are entitled to substantial deference). However, independent review of the 1940 Act, informed by the Court's analysis in *Krug,* leads to the conclusion that if the Interior officials indeed believed that forest lieu selection rights were excluded from the release under the 1940 Act, then the Interior officials erred, and acted properly to correct their error. An agency may change its position, as did Interior, if it believes that the previous position was "grounded upon a mistaken legal interpretation." *Good Samaritan Hospital v. Shalala,* 508 U.S. 402, 417, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993). As held by the Court in *Krug,* as well as by the Ninth Circuit in *Neuhoff,* the release executed by Santa Fe in accordance with section 321(b) was a broad release of all claims on account of the railroad land grants. The Court of Federal Claims correctly so held.

## B

Santa Fe states that its taking claim is not based on forest lieu rights, but that its claim relates only to the base lands patented to it under the 1866 Act. Santa Fe states that its title to these base lands had only been "conditionally relinquished" in escrow in the 1902 agreements made pursuant to the 1897 Act. Santa Fe states that the provision in the 1940 Act that "[n]othing in this section [321(b)] shall be construed as requiring any such carrier to reconvey to the United States lands which have been heretofore patented or certified to it," a provision repeated in Santa Fe's release that "[t]his release does not embrace ... lands which have been patented [to the company] in aid of the construction of its railroad," means that the patented lands that Santa Fe conditionally transferred under the 1897 Act were exempted from the 1940 release obligation and explicitly excepted in the release itself. Santa Fe asserts that the Court of Federal Claims erred by failing to apply this exception.

Thus Santa Fe argues that it has preserved an equitable interest in the parcels here at issue, since they were patented base lands that were only conditionally relinquished in the 1902 agreements, and the unsatisfied condition was the exercise of the forest lieu selection rights. It is this interest that Santa Fe states was an ownership interest of the base lands, and that was taken in 1995 when these lands were declared "nationally significant" and return under the 1993 Act was denied. Santa Fe cites *Oregon v. Bureau of Land Management,* 876 F.2d 1419 (9th Cir. 1989), which held as to the 1897 Act, in an exchange involving state school land selections, "complete titles to the base and to the lieu parcel were not exchanged until the patent [to the lieu land] was actually issued." *Id.* at 1427. The Ninth Circuit

contrasted the "bare legal title to the base" held by the United States before a completed exchange, with the "full equitable title" held by the lieu land applicant. *Id.* at 1428. Santa Fe argues that it had not released this equitable title pursuant to the 1940 Act, and that the 1993 Act so recognized. However, in *Oregon* there was no issue of release; this case does not support Santa Fe's position.

Santa Fe argues that *Krug* is distinguished on this ground, in that *Krug* concerned an application by Santa Fe to exercise lieu selection rights, and did not consider whether Santa Fe had a continuing property interest in the underlying base land pursuant to the patented land exception of the 1940 Act. Santa Fe points out that *Krug* did not address this question, for it was not at issue. The question before us is not whether Santa Fe would have been entitled to rescind its transfers of base lands to the United States, had the United States refused to approve Santa Fe's lieu selections even if there were no waiver or release. The question is whether Santa Fe's release preserved any right to assert any further claim on account of the previously transferred base lands. The nature of any equitable or conditional interest in these transferred lands before the release is no longer relevant, for any such rights arising from the 1902 contracts were released upon acceptance of the release by the Secretary of the Interior in 1941. Applying the principles explained in *Krug*, Santa Fe's release under the 1940 Act did not preserve in Santa Fe, or recover for Santa Fe, a legal or equitable interest in the base lands that had been conveyed to the United States in 1902–1917.

Whatever claims may have been available had Santa Fe not executed the release, such claims were extinguished with the release of all claims pursuant to the 1940 Act. The provision in sections 2(a) and 2(b) of the 1993 Act for returning to the railroads base lands for which lieu selection or other rights under the 1897 Act or supplemental legislation were not realized or exercised, could not rehabilitate claims or potential claims that had been released under the 1940 Act and for which there remained no residual property interest, real or equitable. *See* 1993 Act, § 3(b)(3) ("Nothing in this Act shall be construed as entitling any party to compensation from the United States."). *Cf. United States ex rel. Tennessee Valley Auth. v. Powelson*, 319 U.S. 266, 281, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943) ("respondent had no interest ... which rises to the estate of 'private property' within the meaning of the Fifth Amendment"); *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed.Cir.1993) ("plaintiff must show a legally-cognizable property interest").

The judgment of the Court of Federal Claims is

*AFFIRMED.*