**Aben E. JOHNSON and Joan G. Johnson, Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Nos. 01–428T, 03–2803T, 05–1265T.**

United States Court of Federal Claims.

Dec. 21, 2006.

Patrick K. Rode, Bloomfield Hills, MI, for plaintiff. Mark R. Solomon, Bloomfield Hills, MI, of counsel.

George L. Squires, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Eileen J. O'Connor and Chief, Court of Federal Claims Section David Gustafson, for defendant.

## OPINION

FIRESTONE, Judge.

This case comes before the court on a motion by defendant, the United States ("government"), for partial summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). The government seeks summary judgment on the proper interpretation of the theft loss provision of the Internal Revenue Code ("IRC") § 165(e). At issue is the appropriate timing of a theft loss deduction. The plaintiffs, Aben E. Johnson and Joan G. Johnson ("plaintiffs" or "Johnsons"), had money stolen from them in 1997 and claimed a theft loss deduction in 1998 for a large portion of the amount stolen. At the same time, the plaintiffs embarked on litigation to recover their loss in various jurisdictions. The plaintiffs limited their theft loss deduction to the portion of the loss they believed they would not recover through litigation.

The government contends that, as a matter of law, the plaintiffs were not entitled to take a theft loss deduction until they had resolved (through settlement, abandonment, judgment, or some other final resolution) all of their claims for recovery of the stolen money. The plaintiffs argue that they were entitled to take a theft loss deduction for the portion of the loss they did not believe they would recover while they pursued litigation to recover their entire loss. For the reasons set forth below, the court **GRANTS** the government's motion for partial summary judgment.

## BACKGROUND

The plaintiffs were victims of a fraud scheme through which they lost approximately $78 million. In 1997, the plaintiffs discovered that they had been victimized through a series of fraudulent transactions involving primarily the purchase of gems and jewelry. Def.'s Ex. 1. The perpetrator, John Robert Hasson ("Hasson"), was eventually convicted of fraud and is now incarcerated in federal prison. Def.'s Ex. 2. On February 11, 1998, Mr. Hasson filed a complaint against Mr. Johnson in the Circuit Court for Palm Beach County, Florida. Def.'s Ex. 1. On April 10, 1998, Mr. Johnson filed an answer to Mr. Hasson's complaint and a counterclaim against Mr. Hasson and his associates seeking recovery of the stolen money. Def.'s Ex. 1. Since 1998, the plaintiffs have been involved in litigation in Florida, Barbados, and France to recover their stolen funds. Def.'s Ex. 1. In 2000 and 2001, the plaintiffs obtained judgments against Mr. Hasson and his associates and continued efforts to enforce the judgments through 2005. Def.'s Ex. 1.

The plaintiffs contend that they ascertained with reasonable certainty, in 1998, that they had a reasonable prospect of recovering approximately $20 million of the total theft loss after they reviewed the financial information they had received from Mr. Hasson through discovery in the Florida litigation. Thus, the plaintiffs filed an amended tax return for 1998 in which they took a theft loss deduction for approximately $58 million ($78 million total loss less $20 million). Def.'s Ex. 2. The plaintiffs explained the basis of their loss deduction in their answer to the government's second set of interrogatories as follows:

> In 1997, plaintiffs were not aware of any assets or claims for reimbursement from which there was any prospect of recovering the amount of their loss of in excess of $20 million .... [p]laintiffs state that, when they filed their claims for a refund at issue here, they estimated that they would recover $20 million and excluded that amount from their claim for refund. That estimate was a conservative estimate made by Richard Edwards, Art Stanley, Aben Johnson, Joseph Mc Sorley, and other employees of Shutts & Bowen based on their experience in litigation, collection and valuation. That estimate was based, in part, on a financial statement prepared by Jack Hasson that was obtained by [p]laintiffs in 1998. Based on the assets and insurance policies apparently available, they determined that in their professional judgment [p]laintiffs were likely to recover no more than $20 million. . . . [I]t was an absence of information which led [p]laintiffs to conclude there was no reasonable prospect of recovery of the lost funds.

Def.'s Ex. 2 at 6, 8. According to the plaintiffs, they have recovered slightly less than

$20 million of the loss through litigation in the United States. Def.'s Ex. 2. In addition, in 2005, the plaintiffs recovered $20 million from a bank account in France. Def.'s Ex. 3. The plaintiffs contend that they did not learn about the funds in France until 1999 and that this discovery should not alter the legitimacy of their theft loss deduction in 1998.

The plaintiffs argue that Treas. Reg. § 1.165–1(d), which governs the deductibility of theft losses for which there exists a claim for reimbursement for which there is a reasonable prospect of recovery, allows for a continuous review of the prospects for recovering on a claim for reimbursement, and that a theft loss may be claimed once a taxpayer can "ascertain with reasonable certainty" whether reimbursement will be received. The plaintiffs contend that during the discovery process in their litigation with Mr. Hasson they obtained information regarding Mr. Hasson's assets, and as a result, they were able to ascertain with reasonable certainty, in 1998, that reimbursement for a portion of the loss (approximately $58 million) would not be sustained. The plaintiffs assert that whether they properly claimed a deduction in 1998 is an issue of fact and that summary judgment is therefore not appropriate.

The government disagrees and contends that, under the relevant IRC and Treasury Regulations, the plaintiffs should not be allowed to take a theft loss deduction in 1998 because, at that time, the amount of the plaintiffs' net loss was uncertain. According to the government, as a matter of law the plaintiffs could not ascertain with reasonable certainty in 1998 what they would eventually receive because they were still involved in ongoing litigation with Mr. Hasson. The government argues that the plaintiffs should not be permitted to take a theft loss deduction until the year in which the plaintiffs' recovery claims were finally resolved. More specifically, the government contends that under the applicable regulations, to "ascer-

tain with reasonable certainty" means to make a final determination based on, for example, a judgment, settlement, or abandonment of a claim for reimbursement. Thus, the government asserts that the plaintiffs could not have ascertained with reasonable certainty the amount they would ultimately receive from Mr. Hasson until the litigation with Mr. Hasson was concluded or abandoned, or otherwise finalized.

On July 18, 2006, the government filed a motion for partial summary judgment seeking confirmation of its interpretation of the subject regulations. The court heard oral argument on this motion on November 15, 2006 and requested post-argument supplemental briefing regarding the timing of the discovery of the loss.

## DISCUSSION[1]

A taxpayer is required, under IRC § 165(a), to take "as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." A theft loss deduction is provided for by IRC § 165(e), which states that "[f]or purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." Treas. Reg. § 1.165–8(a)(2) states:

A loss arising from theft shall be treated under section 165(a) as sustained during the taxable year in which the taxpayer discovers the loss. See section 165(e). Thus, a theft loss is not deductible under section 165(a) for the taxable year in which the theft actually occurs unless that is also the year in which the taxpayer discovers the loss. However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, see § 1.165–1(d).

Treas. Reg. § 1.165–1(d)(2), in turn, provides in relevant part:

---

1. The standard of review for this motion for partial summary judgment is well-settled. Where, as here, the motion is premised on the proper interpretation of a regulation and all of the plaintiffs' factual assertions are taken as true, summary judgment on the legal issue is appropriate. *See Santa Fe Pacific R. Co. v. United*

*States*, 294 F.3d 1336, 1340 (Fed.Cir.2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment"); *Costain Coal, Inc. v. United States*, 126 F.3d 1437, 1440 (Fed.Cir.1997); *Reese v. United States*, 24 F.3d 228, 230 (Fed.Cir.1994).

If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for the purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received.[2]

The net effect of Treas. Reg. § 1.165–1 on the appropriate timing of a theft loss deduction under IRC § 165 is as follows. Under IRC §§ 165(a) & (e), a taxpayer who has suffered a theft loss shall take a theft loss deduction in the year the loss is sustained, which is the taxable year in which the taxpayer discovers the loss. However, if in the year the taxpayer discovers the loss there exists a reasonable prospect of recovering some portion of the loss, the taxpayer must postpone the theft loss deduction for that portion. Typically, a court will find that a taxpayer has a reasonable prospect of recovery if a taxpayer is engaged in good faith in efforts to recoup a loss, and the chance of recovery is "sufficiently probable to warrant

bringing a suit." *Estate of Scofield v. Commissioner,* 266 F.2d 154, 159 (6th Cir.1959). If a taxpayer does not take a theft loss deduction for the entire loss in the year of discovery, but instead has a reasonable prospect of recovering all or a portion of the loss and thus postpones all or a portion of the theft loss deduction, then, under Treas. Reg. § 1.165–1(d)(2), the taxpayer may not take a theft loss deduction for that portion for which reimbursement may be received until the taxpayer can ascertain with reasonable certainty whether such reimbursement will in fact be received. Treas. Reg. § 1.165–1(d)(2)(i) provides that a taxpayer may ascertain with reasonable certainty whether she will be reimbursed "for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim."

### A. In 1997, the Year of Discovery, the Plaintiffs Had a Reasonable Prospect of Recovering Their Theft Loss.

The plaintiffs contend that they discovered, in 1997, that they had been victims of a theft. The government does not dispute this

---

**2.** The government contends that the language of Treas. Reg. § 1.165–1(b) is relevant to the issue at hand. Treas. Reg. § 1.165–1(b) states: "To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and ... actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss." The government argues that the "closed and completed transaction" provision of Treas. Reg. § 1.165–1(b) should guide the court in interpreting the "reasonable certainty" requirement of Treas. Reg. § 1.165–1(d)(2). Interpreting these two provisions together, the government argues that the "reasonable certainty" standard may only be met if a taxpayer can demonstrate a "closed and completed transaction." In support of its argument, the government relies on the holding in *Ramsay Scarlett & Co., Inc. v. Commissioner,* 61 T.C. 795, 808, 1974 WL 2742 (1974), aff'd, 521 F.2d 786 (4th Cir. 1975), in which the Tax Court held that an "essential inquir[y] under the 'closed transaction' concept has been whether in the year the deduction is sought, there existed a substantial possibility that the alleged losses could be recouped by actions against responsible third parties or otherwise."

The plaintiffs contend that the "closed and completed transaction" provision applies to the

determination of whether a loss actually occurred, and, because the fact that the plaintiffs actually sustained a theft loss is undisputed, this provision is irrelevant here.

The court agrees with the plaintiffs. The "closed and completed transaction" provision of Treas. Reg. § 1.165–1(b) addresses whether a loss is sufficiently complete to be deductible. *See United States v. S.S. White Dental Mfg. Co. of Pa.,* 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120 (1927). The use of the phrase "closed and completed transaction" in *Ramsay Scarlett* does not create an additional requirement to the "reasonable prospect of recovery" and "ascertain with reasonable certainty" analysis set forth in Treas. Reg. § 1.165–1(d)(2); to the extent that the court in *Ramsay Scarlett* used "closed and completed transaction" to mean that a taxpayer's reimbursement efforts must be complete before the taxpayer may take a theft loss deduction for any portion of the loss, this court disagrees. In this case, the "closed and completed transaction" resulting in the loss, as required by Treas. Reg. § 1.165–1(b), was the actual theft. The issue before the court is not whether a loss actually occurred. It is not disputed that a loss occurred and was discovered in 1997. Instead, the issue is whether the plaintiffs were allowed to take a deduction for that loss in 1998.

contention. Under Treas. Reg. § 1.165–8(a)(2), a theft loss is typically sustained, for the purposes of IRC § 165(a), in the year in which the taxpayer discovers the loss. There appears to be no dispute that in 1997 the plaintiffs had a reasonable prospect of recovering the theft loss and initiated litigation in 1998 to recover the loss. Under Treas. Reg. § 1.165–1(d)(2), because the plaintiffs had a reasonable prospect of recovering the theft loss in 1997, the loss could not be claimed as a deduction under IRC § 165(a) until the plaintiffs could "ascertain with reasonable certainty" whether reimbursement for the loss would be received. Resolution of the government's motion therefore turns on the correct interpretation of "ascertain with reasonable certainty." If, as the government contends, the regulation requires some "resolution" of an ongoing claim for reimbursement in order to "ascertain with reasonable certainty" the amount of recovery, then the plaintiffs were not permitted to take the deduction in 1998, because it is not disputed that plaintiffs' reimbursement efforts were not resolved until after 1998.

### B. The Plaintiffs, As a Matter of Law, Could Not Ascertain With Reasonable Certainty the Amount of Reimbursement They Would Receive in 1998.

The government contends that the requirement set forth in Treas. Reg. § 1.165–1(d)(2), and the related examples in Treas. Reg. § 1.165–1(d)(2)(i), stand for the proposition that, as a matter of law, the plaintiffs could not ascertain with reasonable certainty whether they would receive reimbursement for the theft loss until they could determine that either no reimbursement would ever be received, or that they would receive reimbursement of a defined amount. The government argues that, because the plaintiffs were engaged in litigation to recover their loss until at least 2001, and because the plaintiffs had valid claims, and ultimately obtained judgments, against Mr. Hasson and his associates, as a matter of law the plaintiffs could not possibly have ascertained with reasonable certainty in 1998 the amount of

reimbursement they would receive. Furthermore, the government contends that because the plaintiffs did not learn until 1999 about additional funds that had been held in Europe and did not recover these funds until 2005, the plaintiffs had not made a sufficiently thorough investigation at the end of 1998 to ascertain their loss with reasonable certainty. According to the government, Treas. Reg. § 1.165–1(d)(2)(i) requires the taxpayer to show, with objective evidence, that a claim for reimbursement has been settled, litigated to a judgment, abandoned, or otherwise finalized before the taxpayer may claim the theft loss deduction. The government argues that to "ascertain" means "to learn with certainty"[3] and that the taxpayer cannot "learn with certainty" until there has been a resolution of the recovery process or an abandonment of the claim.

The plaintiffs argue that the government's reading of the regulation is too narrow and that Treas. Reg. § 1.165–1(d)(2)(i) does not bar a taxpayer from claiming a theft loss deduction while the taxpayer is actively seeking recovery of her loss. According to the plaintiffs, the pursuit of litigation is only one of many factors that may be relevant to determining whether there is "reasonable certainty" as to the amount of the loss that will be recovered. The plaintiffs contend that under the established cases construing Treas. Reg. § 1.165–1, a taxpayer may claim a theft loss deduction for a portion of a theft loss and still pursue litigation, as long as the taxpayer has ascertained with reasonable certainty that reimbursement will not be received for that portion of the loss. *See Jeppsen v. Commissioner*, 128 F.3d 1410, 1419 (10th Cir.1997), aff'g T.C. Memo 1995–342; *Rainbow Inn v. Commissioner*, 433 F.2d 640, 644 (3rd Cir.1970), *rev'g* T.C. Memo 1969–217, 1969 WL 1208; *Scofield's*, 266 F.2d at 163; *Ramsay Scarlett*, 61 T.C. at 812; *Parmelee Transp. Co.*, 173 Ct.Cl. 139, 351 F.2d 619, 628 (1965); *Wagner v. Commissioner*, T.C. Memo 1998–338, 1998 WL 649075 (holding that "where the financial condition of the person against whom a claim is filed is such that actual recovery cannot

**3.** The government cites *Webster's New Collegiate Dictionary,* C. & G. Merriam Co. (1977).

realistically be expected, the loss deduction need not be postponed.").

The plaintiffs are correct that under the established case law a taxpayer who is engaged in bona fide efforts to recover what was stolen is not, as a matter of law, precluded from taking a theft loss deduction. However, the cases cited by the plaintiffs involve theft loss deductions taken *in the year* that the theft was discovered, and turn on whether the taxpayer properly determined that there was a "reasonable prospect for recovery." [4] Treas. Reg. § 1.165–1(d)(2)(i) provides that whether a "reasonable prospect of recovery" exists is a "question of fact to be determined upon an examination of all facts and circumstances." This case, in contrast, turns on whether, after having elected to pursue a claim for reimbursement for which there was a reasonable prospect of recovery, the plaintiffs "ascertained with reasonable certainty" in 1998 whether or not reimbursement would be received. Treas. Reg. § 1.165–1(d)(2)(i) states with regard to the "reasonable certainty" inquiry that "whether or not such reimbursement will be received may be ascertained with reasonable certainty for example, by a settlement of the claim, or by an adjudication of the claim, or by an abandonment of the claim."

Several of the above-cited decisions have tended to combine the "reasonable prospect of recovery" inquiry and the "ascertain with reasonable certainty" inquiry. However, these two inquiries are distinct and the standards to be applied are different.[5] The court therefore agrees with the government that, under Treas. Reg. § 1.165–1(d), the requirement that a taxpayer "ascertain with reasonable certainty" means that a taxpayer must obtain a verifiable determination of the amount she will receive based on a resolution of the reimbursement claim before taking a theft loss deduction. All of the examples provided in Treas. Reg. §§ 1.165–1(d)(2)(i) & (ii) involve some type of resolution of a claim for reimbursement. A settlement and an adjudication both involve final determinations. In addition, if a taxpayer claims that she has abandoned a claim, Treas. Reg. § 1.165–1(d)(2)(i) requires that the taxpayer produce objective evidence of abandonment of the claim, "such as the execution of a release." Finally, requiring resolution of the claim with an objectively verifiable amount of loss is, as the government correctly notes, consistent with the plain

---

4. The plaintiffs rely on *Corral Creek Cattle Co. v. Commissioner,* T.C. Memo 1978–260, 1978 WL 2946, for their argument that a taxpayer is permitted to take a theft loss deduction for a portion of a loss, while pursuing reimbursement for that portion, in the year following the year of discovery. However, the plaintiffs' reliance on *Corral Creek* is misplaced. In *Corral Creek,* the taxpayer's taxable year ended on February 28. Under IRC § 441(f)(1), a taxpayer may elect to compute its taxable income on the basis of an annual period other than the calendar year. The court in *Corral Creek* analyzed whether the taxpayer had a reasonable prospect of recovery as of February 28, the close of the taxpayer's taxable year. *Id.* at *5. Thus, the analysis in *Corral Creek* is no different than that in other cases considering whether a taxpayer was appropriate in taking a theft loss deduction in the taxable year in which the taxpayer discovered the loss. In those cases the question turns on whether there is a "reasonable prospect of recovery." *Corral Creek* did not address the standard to be applied in a year following the year of discovery once the taxpayer has elected to pursue a claim for which the taxpayer has a "reasonable prospect of recovery" and must "ascertain with reasonable certainty" the amount of recovery. As discussed *infra,* the standards differ for each.

5. To date, the decisions that have contemplated the proper interpretation of IRC § 165(e) with regard to the appropriate timing of a theft loss deduction have considered two different scenarios. First, courts have evaluated whether a taxpayer who took a theft loss deduction in the year of discovery, and whose deduction in that year was challenged by the IRS, had a reasonable prospect of recovering all or a portion of the loss in the year of discovery. *See, e.g., Jeppsen,* 128 F.3d at 1413; *Ramsay Scarlett,* 521 F.2d at 787; *Rainbow Inn,* 433 F.2d at 644; *Corral Creek,* T.C. Memo 1978–260 at *5; *Parmelee,* 351 F.2d at 628. Alternately, courts have considered whether a taxpayer whose decision to wait to take a theft loss deduction until recovery efforts were complete was challenged by the IRS was appropriate in postponing the theft loss deduction when the taxpayer did not have any real prospect of recovering the loss. *See, e.g., Scofield's,* 266 F.2d at 159.

No court has considered whether a taxpayer was appropriate in postponing a theft loss deduction until after the year of discovery (in which the taxpayer had a reasonable prospect of recovery), but when recovery efforts were not yet completed or abandoned, which is at issue here.

meaning of "ascertain," which is defined to mean "to make certain, definite, and precise" or "to discover with certainty." The *American Heritage Dictionary of the English Language* (4th ed.2000). Based on the foregoing, the court concludes that, while a taxpayer may in the year of discovery take a loss where there is not a "reasonable prospect of recovery," if there is a "reasonable prospect of recovery" the taxpayer must wait to take the theft loss deduction until the recovery process is finalized, either through an adjudication or a settlement, until the taxpayer abandons her collection efforts, or until the claim for reimbursement is resolved in some other way.

 The plaintiffs' contention that the analysis of their lawyers and accountants is sufficient to meet the "ascertain with reasonable certainty" standard is not supported. By their own admission, plaintiffs state that they made an "estimate" of the amount of recovery. Def.'s Ex. 2 at 6, 8 ("Plaintiffs state that, when they filed their claims for a refund at issue here, they *estimated* that they would recover $20 million and excluded that amount from their claim for refund. That *estimate* was a conservative *estimate* made by [lawyers and accountants] based on their experience in litigation, collection and

valuation") (emphasis added). The analysis performed by the lawyers and accountants may have been sufficient to determine whether there was a "reasonable prospect for recovery" in the year of discovery but it was not sufficient to "ascertain with reasonable certainty" the amount of reimbursement the plaintiffs would receive after a resolution of their reimbursement claims.[6] Thus, the plaintiffs' theft loss deduction in 1998 based on an "estimate" that was made well before the recovery process was resolved was premature and cannot be sustained.

## CONCLUSION

For the reasons set forth above, the government's motion for partial summary judgment is **GRANTED.** The court will contact the parties to schedule further proceedings for resolving the remaining issues in these consolidated cases.

**IT IS SO ORDERED.**

---

**6.** Indeed, the record reveals that at the time the plaintiffs took the theft loss deduction, they had not completed their investigation into Mr. Hasson's foreign holdings, which eventually led to an additional $20 million recovery in 2005. This is not to say that the appropriate year for the plaintiffs to take a theft loss deduction is 2005. The appropriate year is that in which the plaintiffs' claim for reimbursement was resolved to some degree of finality, and is an issue that remains to be determined in these cases.