Aben E. JOHNSON and Joan G. Johnson, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 01–428T.

United States Court of Federal Claims.

Sept. 27, 2007.

Mark R. Solomon and Patrick K. Rode, Bloomfield Hills, MI, for plaintiffs.

George L. Squires, U.S. Department of Justice, Washington, DC, with whom were

Richard T. Morrison, Acting Assistant Attorney General and Chief David Gustafson, for defendant.

## OPINION

FIRESTONE, Judge.

This case comes before the court on a motion by the defendant, the United States ("government" or "defendant"), for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). The plaintiffs, Aben E. Johnson and Joan G. Johnson ("Johnsons" or "plaintiffs"), were victims of a fraudulent gem scheme in which they lost nearly $78,000,000.00 to John Robert Hasson during the 1990s.[1] In 2000, Mr. Hasson was convicted in the United States District Court for the Southern District of Florida of conspiracy to commit crimes against the United States, wire fraud, conspiracy to commit money laundering, and conspiracy to obstruct justice, and sentenced to 40 years in prison. DPFUF ¶ 10, 11. As part of his sentence Mr. Hasson was also ordered to reimburse the plaintiffs $77,722,811.00. DPFUF ¶ 11. To date, the plaintiffs have recouped approximately $40,000,000.00 from Mr. Hasson and his associates. *Johnson v. United States*, 74 Fed.Cl. 360, 362 (2006).

In this action, the plaintiffs are seeking to recover taxes they claim they paid in error in connection with the fraudulent gem scheme. The plaintiffs claim that they erroneously reported capital gains of $2,599,500.00 and are entitled to an adjustment for capital gains in that amount on their 1994 income tax return based on the sales of gems that the plaintiffs reported on their return and that the plaintiffs allege did not actually occur. Pl.'s Ex. 2. The plaintiffs are seeking a tax refund of approximately $613,669.00 from the government for the tax year 1994.

While the government does not dispute that the plaintiffs were the victims of a fraudulent scheme, the government contends that the plaintiffs are not entitled to a tax refund. According to the government, the undisputed evidence shows that the plaintiffs received checks or other gems from Mr. Hasson during 1994 and that the receipt of checks and gems are sufficient to establish tax liability. The plaintiffs counter with affidavits and excerpted testimony from Mr. Hasson's criminal trial to show that Mr. Hasson did not sell any gems to third parties in 1994 but had paid the plaintiffs with money Mr. Hasson had received from the plaintiffs as part of the fraudulent scheme. The plaintiffs argue that there are disputed issues of fact regarding the existence of the gem sales which preclude a grant of summary judgment. For the reasons that follow, the court finds that genuine issues of material fact exist regarding the occurrence of the gem sales which put whether the plaintiffs received any income in 1994 in doubt. Accordingly, the government's motion for summary judgment is **DENIED**.

## BACKGROUND

The following facts are undisputed.[2] Beginning in the 1980s, plaintiff Aben Johnson purchased hundreds of gems from Mr. Hasson through Hasson's purported jewelry business and invested tens of millions of dollars in the gems. PPFUF ¶ 1. Mr. Johnson purchased the gems from Mr. Hasson with the understanding that Mr. Hasson was acting as his agent and was purchasing gems from estates and selling gems to third parties on behalf of Mr. Johnson. PPFUF ¶ 2. In 1994, Mr. Hasson, as part of a scheme through which Mr. Hasson defrauded Mr. Johnson, allegedly sold eleven gems on Mr.

---

1. This case is one of three cases (including Case No. 03–2803T and Case No. 05–1265T) filed by the Johnsons in connection with the taxes they paid during the period of the theft. In *Johnson v. United States*, 74 Fed.Cl. 360 (2006), the court granted the government's motion for partial summary judgment in Case No. 03–2803T, holding that the plaintiffs could not assert a theft loss deduction in the year that they discovered the theft, 1998, because they were actively pursuing recovery of their losses from Mr. Hasson at that time and had not ascertained with reasonable certainty how much they would recover. *Id.* at 366. The question of when the Johnsons may properly claim their theft loss deduction is the subject of cross motions for summary judgment in the companion cases.

2. The government states that for purposes of this motion it is willing to accept the truth of all of plaintiffs' factual assertions. Def.'s Rep. Br. at 1–2.

Johnson's behalf: gems 4, 5, 7, 8, 27, 28, 35A, 35B, 35C, 43, and 119. PPFUF ¶ 3. Each transaction will be examined in turn.

## A. Transaction 1—Gem 5

On or about May 12, 1994, Mr. Hasson informed Mr. Johnson that he had sold gem 5 for $166,500.00. PPFUF ¶ 4. On May 12, 1994, Mr. Johnson was issued check number 1065 from Jack Hasson, Inc. for $166,500.00; this check was drawn on account number 1683607203503, in the name of Jack Hasson, Inc., at the First National in Palm Beach Bank. Pl.'s Ex. A.3. The only deposits made to Mr. Hasson's account in the thirty days prior to May 12, 1994 were from Mr. Johnson. Edwards Decl. ¶ 8. No deposits were made during that time period by any other party in the amount of $166,500.00 or otherwise. Id. Mr. Hasson, however, received $2,800,000.00 from Mr. Johnson in the thirty days prior to May 12, 1994. Id.

## B. Transaction 2—Gems 27 and 28

On or about June 4, 1994, Mr. Hasson informed Mr. Johnson that he had sold gems 27 and 28 to Mr. Coors, allegedly a member of the Coors brewing family. PPFUF ¶ 6. On June 15, 1994, Mr. Johnson was issued check number 1076 from Jack Hasson, Inc. for $1,209,000.00; this check was drawn on account number 1683607203503, in the name of Jack Hasson, Inc., at the First National in Palm Beach Bank. Pl.'s Ex. A.3. The only deposit made to Mr. Hasson's account in the thirty days prior to June 15, 1994 was from Mr. Johnson. Edwards Decl. ¶ 9. No deposit for $1,209,000.00 was made by Mr. Coors or by any other third party during that time period. Id. Mr. Hasson had, however, received $3,542,000.00 from Mr. Johnson on June 15, 1994. Id.

Subsequently, Mr. Hasson told Mr. Johnson that Mr. Coors no longer wanted gems 27 and 28, and Mr. Johnson agreed to repurchase the gems, along with a third gem, gem 126. Mr. Johnson paid Mr. Hasson $400,000.00 for these three gems on October 12, 1994. When Mr. Johnson received gems 27 and 28 from Mr. Hasson, the gems were renumbered as gems 124 and 125. PPFUF

¶ 8. As of December 31, 2000, gems 124 through 126, for which Mr. Johnson paid Mr. Hasson $400,000.00 on October 12, 1994, were appraised at a total value of $50,738.00. Pl.'s Ex. C.1.

## C. Transaction 3—Gems 4, 7, 8, 43, and 119

On or about December 7, 1994, Mr. Hasson informed Mr. Johnson that gems 4, 7, 8, 43, and 119 had been sold for $636,000.00. The plaintiffs never received a check as payment for these sales. PPFUF ¶ 9. No deposits in the amount of $636,000.00 were made to Mr. Hasson's accounts in the thirty days prior to December 7, 1994, except for funds from Mr. Johnson. Edwards Decl. ¶ 10.

## D. Transaction 4—Gems 35A, 35B, and 35C

On or about December 7, 1994, Mr. Hasson informed Mr. Johnson that gems 35A, 35B, and 35C had been sold to Mr. Lay, allegedly a member of the Frito–Lay family, for $1,569,000.00. The plaintiffs never received a check as payment for these sales. PPFUF ¶ 10. No deposits in the amount of $1,569,000.00 were made to Mr. Hasson's accounts in the thirty days prior to December 7, 1994, except for funds from Mr. Johnson. Edwards Decl. ¶ 10.

In 1996, the plaintiffs repurchased a necklace and ring consisting in part of gems 35A, 35B, and 35C. The repurchased gems were renumbered as 246A and 246B. Pl.'s Ex. C.10. Mr. Hasson subsequently informed Mr. Johnson that he used the total proceeds of $2,205,000.00 from the sale of gems 4, 7, 8, 35A, 35B, 35C, 43, and 119[3] toward the purchase of gem 146, which Mr. Hasson alleged was worth $4,000,000.00. PPFUF ¶ 14. Mr. Johnson wrote Mr. Hasson three checks in the total amount of $1,860,000.00 for gem 146 (the $1,795,000.00 difference between the proceeds from the sale of gems and the value of gem 146, plus a $50,000.00 commission for Mr. Hasson and $15,000.00 for the purchase of other gems). Pl.'s Ex. C.12. As of December 31, 2000, gems 246A and 246B, which Mr. Johnson repurchased from Mr. Hasson in 1996, were valued at $87,300.00. Pl.'s Ex.

---

**3.** The plaintiffs were told by Mr. Hasson that they were owed a total of $2,205,000.00 from the sale of these gems by Mr. Hasson to third parties.

However, Mr. Hasson never paid the plaintiffs the money they believed they were owed. PPFUF ¶¶ 9, 10.

C.2. As of December 31, 2000, gem 146, which Mr. Hasson alleged was worth $4,000,000.00, was appraised at $104,125.00. Pl.'s Ex. C.3.

### E. The Plaintiffs' 1994 Tax Return and Claims for Refund

The plaintiffs filed their original joint federal income tax return for the 1994 taxable year on or before April 15, 1995. Compl. ¶ 6. On Schedule D of the 1994 tax return, the plaintiffs reported capital gains resulting from the six sales of gems made in 1994, as listed below, for a total reported capital gain in 1994 of $2,599,500.00. DPFUF ¶ 3.

| GEMS | DATE ACQUIRED | DATE SOLD | SALES PRICE | COST | GAIN (LOSS) |
|---|---|---|---|---|---|
| # 119 | 10/21/94 | 12/07/94 | $ 6,000 | $ 6,000 | $ 0.00 |
| # 4,7,8 | 02/06/89 | 12/07/94 | $ 624,000 | $144,000 | $ 480,000 |
| # 5 | 02/06/89 | 05/12/94 | $ 166,500 | $ 80,000 | $ 86,500 |
| # 27, 28 | 02/26/90 | 06/04/94 | $1,209,000 | $375,000 | $ 834,000 |
| # 35A,B,C | 07/21/90 | 12/07/94 | $1,569,000 | $370,000 | $1,199,000 |
| # 43 | 04/06/92 | 12/07/94 | $ 6,000 | $ 6,000 | $ 0.00 |
| | | | $3,580,500 | $981,000 | $2,599,500 |

In 1997, Mr. Johnson discovered that Mr. Hasson had defrauded him in the various gem purchase transactions described above and in 1998 initiated litigation against Mr. Hasson and his associates. On April 15, 1998, the plaintiffs filed a protective claim for refund for the tax year 1994. Pl.'s Ex. 2. The claim was not allowed by the Internal Revenue Service ("I.R.S."). On April 15, 1999, the plaintiffs filed a protective claim for refund for the tax year 1995. Pl.'s Ex. 6. On July 28, 1999, the claim was disallowed by the I.R.S. Pl.'s Ex. 7. On November 6, 2000, the plaintiffs filed claims for a refund for the tax years 1994 and 1995 identical to those filed in 1998 and 1999, except that they were not captioned "protective claim for refund." Pl.'s Ex. 3, 8. On February 20, 2001, the I.R.S. sent plaintiffs a notice of disallowance of the claims for a refund filed in 2000. Pl.'s Ex. 4, 9.

### F. The Current Litigation

The plaintiffs filed a complaint on July 25, 2001, seeking a tax refund in the amount of $613,669.00 for the tax year 1994, a tax refund in the amount of $121,635.00 for the tax year 1995, and a capital loss carryforward as of the end of 1995 in the amount of $191,066.00, all in an effort to recover taxes paid by the plaintiffs as a result of the capital gains they reported on their 1994 tax return from the alleged gem sales. The government initially filed a motion for summary judgment on October 10, 2003, contending that no evidence exists to demonstrate that the plaintiffs did not sell each of the gems at issue during 1994. The plaintiffs filed a response on November 13, 2003, and the government a reply on November 20, 2003. Thereafter, on December 10, 2003, the plaintiffs filed a second complaint in Case No. 03–2803T. On April 22, 2004, both cases were stayed so that the parties could engage in settlement discussions.

The settlement negotiations failed and in July 2005, the stay was lifted and a discovery schedule was set. On December 7, 2005, the plaintiffs filed a third complaint in Case No. 05–1265T. After discovery was completed in all of the cases, the government filed a motion for partial summary judgment in Case No. 03–2803T, which was granted on December 21, 2006. *Johnson,* 74 Fed.Cl. 360 (2006); *see supra,* n. 1. At the February 16, 2007 status conference, the parties asked the court to resolve the government's outstanding motion for summary judgment in the pending action. Supplemental briefing was completed on August 17, 2007. The court has determined that an oral argument is not necessary.

## DISCUSSION

### A. Standard of Review

The government has filed this motion for summary judgment under RCFC 56. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact; once this burden is met, in order to defeat summary judgment, the nonmoving party must present evidence which demonstrates such a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Long Island Sav. Bank, FSB v. United States,* 503 F.3d 1234, 1243–44 (Fed.Cir.2007). In determining whether a genuine issue of material fact exists, the court must consider the evidence and resolve all doubts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Am. Pelagic Fishing Co. v. United States,* 379 F.3d 1363, 1371 (Fed.Cir.2004). A dispute of material fact is genuine "if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Disputed Issues of Fact Preclude Summary Judgment on Whether the Plaintiffs "Clearly Realized an Accession to Wealth" From the Alleged Gem Sales in 1994.

The government contends that it is entitled to judgment as a matter of law, arguing that the plaintiffs have not set forth evidence to support their assertion that they did not clearly realize wealth when Mr. Hasson allegedly sold various gems on their behalf during 1994. The government argues that any accession to wealth over which an individual has dominion constitutes "gross income" under both the Internal Revenue Code ("I.R.C.") and Supreme Court precedent. *See* I.R.C. § 61(a) (stating that "gross income means all income from whatever source derived"); *James v. United States,* 366 U.S. 213, 219, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (noting that "all income from whatever source derived" has been held to mean "all accessions to wealth, clearly realized, and over which the taxpayers have complete dominion" (quoting *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955))).

The government contends that the plaintiffs do not dispute that they received $1,375,000.00 from Mr. Hasson in connection with the alleged sale of gems 5, 27, and 28 and that they received gem 146, which they had been told was allegedly worth $4,000,000.00, in exchange for the alleged proceeds from the sale of gems 4, 7, 8, 35A, 35B, 35C, 43 and 119. As such, the government contends that the plaintiffs clearly realized an accession to wealth in 1994 that constituted gross income, and therefore the plaintiffs are not entitled to a tax refund for the capital gains they reported in 1994 in connection with those sales.

The plaintiffs respond that they have provided sufficient evidence to support a conclusion that Mr. Hasson never sold any gems on their behalf in 1994, and therefore that summary judgment is not appropriate. The plaintiffs assert that they initially reported the sales at issue on their 1994 tax return because they had been led to believe, by Mr. Hasson, that Mr. Hasson was acting as a broker on their behalf and selling the gems at issue to third parties. Relying principally on the affidavit from Mr. Edwards and testimony from the Hasson criminal trial, the plaintiffs assert that it is now clear that Mr. Hasson never received any funds from third parties for those alleged sales. The plaintiffs further contend that, while they did receive some money from Mr. Hasson, the money they received from Mr. Hasson was money

they had given to Mr. Hasson as part of his fraudulent scheme and that they were repaid these funds to conceal the scheme. The plaintiffs argue that the return of their own money to conceal a fraud should not be considered income for tax purposes. The plaintiffs rely on *Greenberg v. Commissioner*, 71 T.C.M. (CCH) 3191 (1996), in which the Tax Court considered whether interest payments received by taxpayers in connection with a "Ponzi" scheme were income. The Tax Court held that the payments received by the victim of a "Ponzi" scheme were not income subject to taxation, stating that "the payments petitioners received through their investment ... were not for the use and forbearance of their money, but rather such payments were made to conceal [the] fraudulent misappropriation of petitioners' investment." *Id.* at *5. The court further held that the payments should be considered a return of the plaintiffs' capital and did not constitute income. *Id.* The plaintiffs contend that, similarly in this case, the money they received from Mr. Hasson was actually a return of their own capital made to conceal Mr. Hasson's fraudulent activities, and that the money should not be characterized as income because no "income" was realized.

In response, the government contends that the source of the money the plaintiffs received from Mr. Hasson is irrelevant, because under IRC § 61(a), gains from dealing in property, regardless of the source, must be included in a taxpayer's gross income. In particular, the government asserts that, even if the money the plaintiffs received from Mr. Hasson in exchange for gems 5, 27, and 28 was the same money that the plaintiffs had previously paid Mr. Hasson, the exchange of gems for money still constitutes a sales transaction from which the plaintiffs realized a gain. The government argues that *Greenberg* is distinguishable from the case *sub judice*, because *Greenberg* involved many transactions over a significant period of time, whereas the plaintiffs received income from three discrete transactions involving the sale of gems. The government also asserts that application of the holding in *Greenberg* should be limited to disputes involving the definition of "interest income," which the government argues is not the case before the

court. The government contends that, because the plaintiffs received an amount of money, over which the plaintiffs had complete control, that exceeded the plaintiffs' reported basis in the subject gems, the plaintiffs' accession to wealth must be included in their taxable income for 1994, and that the Tax Court's ruling in *Greenberg* does not apply.

 While the court recognizes that ordinarily, any accession to wealth clearly realized must be included in taxable income, *Glenshaw Glass*, 348 U.S. at 431, 75 S.Ct. 473, the court agrees with the plaintiffs that an exception has been identified in extraordinary cases involving fraudulent schemes where a taxpayer can establish that the payments they received were simply a return of capital. *See Greenberg*, 71 T.C.M. at *5; *see also* I.R.S. Chief Counsel Advisory 200451030 (Sept. 30, 2004). This case potentially involves such an exception. In particular, if the plaintiffs can establish that Mr. Hasson never sold any gems in 1994, but simply paid the plaintiffs from other funds that they had provided Mr. Hasson (in an effort to conceal and advance his fraudulent scheme), the plaintiffs will be able to establish that they did not clearly realize any accession to wealth and were not subject to tax on the amounts received. Here, the plaintiffs have put forth sufficient facts to place the existence of the subject gem sales in 1994 in doubt. The evidence presented by the plaintiffs shows that Mr. Hasson did not receive funds into his account from any persons other than the Johnsons and paid the Johnsons from that same account. No evidence has been presented to suggest that any third party paid Mr. Hasson for any of the subject gems during the relevant period. If the plaintiffs' evidence is not contradicted, the plaintiffs will have established that Mr. Hasson did not sell the subject gems and thus the Johnsons did not have any "accession to wealth" based on the sale of the subject gems.

In addition, the fact that the plaintiffs received funds from Mr. Hasson does not alter this conclusion. The plaintiffs have put forth sufficient facts to establish that under the fraud scheme at issue the funds the plaintiffs

received were paid to the plaintiffs by Mr. Hasson to further his illegal aims. The undisputed evidence presented by the plaintiffs shows that Mr. Hasson took more than $77,000,000.00 from the plaintiffs as part of his fraudulent gem scheme. Thus, this case is analogous to the extraordinary circumstances in *Greenberg* in which the taxpayer was able to show that payments received in connection with a "Ponzi" scheme were not subject to income tax. In both instances it appears that the money the taxpayer received was a return of capital designed to conceal a fraud. Here, the facts are more extraordinary than they were in *Greenberg,* in that the funds plaintiffs received from Mr. Hasson from the alleged gem transactions appear to be funds that the plaintiffs, themselves, paid to Hasson. No third parties were involved in the purported sales. In addition, the undisputed amount the plaintiffs lost to Hasson through the fraud was extraordinary and the meager amount they received from Hasson in no way approached the amount they lost. In such circumstances, the plaintiffs have shown that there are facts in dispute regarding whether, even though they received some payments from Hasson, that the plaintiffs received any "income" from Hasson in 1994.

## CONCLUSION

Because the plaintiffs have presented sufficient evidence to show that there may not have been any gem sales in 1994 and that the only money they received from Mr. Hasson was money they advanced to Mr. Hasson as part of his illegal scheme, the court cannot conclude, as a matter of law, that the plaintiffs clearly realized an accession to wealth resulting from any alleged gem sales for tax year 1994. Accordingly, the government's motion for summary judgment must be **DENIED.**

Following resolution of the parties' cross-motions for summary judgment in Cases 03–2803T and 05–1265T, the court will contact the parties to schedule a status conference to discuss the next steps towards resolution of the plaintiffs' claims.

**IT IS SO ORDERED.**