# United States Court of Appeals for the Federal Circuit

---

**CHARLES P. ADKINS, JANE E. ADKINS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1961

---

Appeal from the United States Court of Federal Claims in No. 1:10-cv-00851-MMS, Judge Margaret M. Sweeney.

---

Decided: May 8, 2017

---

JOHN FRANKLIN RODGERS, Redmon, Peyton & Braswell, LLP, Alexandria, VA, argued for plaintiffs-appellants.

ANTHONY T. SHEEHAN, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by RICHARD FARBER, CAROLINE D. CIRAOLO.

---

Before LOURIE, O'MALLEY, and TARANTO, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Charles P. Adkins and Jane E. Adkins seek review of the February 23, 2016 decision of the Court of Federal Claims (the "Claims Court") dismissing with prejudice their complaint for an income tax refund. *Adkins v. United States*, 125 Fed. Cl. 304 (2016). For the following reasons, we vacate and remand.

## BACKGROUND

This case concerns a federal income tax refund sought by the Adkinses, based on financial losses they sustained as victims of a fraudulent investment scheme. The main facts are not in dispute—the central issue on appeal is whether that loss was properly claimed as a deduction in the 2004 tax year, as opposed to some other year. For context, we reiterate the background facts as found by the Claims Court.

Beginning in 1997, the Adkinses began investing in securities via Donald & Company, primarily through its employee Mr. Otto Kozak. Unbeknownst to the Adkinses, Donald & Co. was operating a "pump-and-dump" scheme—(1) purchasing stock in a company; (2) encouraging its customers to do the same; (3) selling stock in the company at the artificially increased price for a profit; and (4) leaving its customers holding stock worth significantly less due to the aforementioned sales. At their peak in 2000, the Adkinses' investments with Donald & Co. were valued at $3.6 million. By the end of 2001, as a result of the scheme, the value of their investments had declined to $9,849. In February 2002, the Adkinses, discovering that they had been the victims of fraud, submitted a statement of claim to the National Association of Securities Dealers ("NASD") in support of arbitration against Donald & Co. and three of its principals: David Stetson, Slava Volman, and Steven Ingrassia.

In March 2003, the Adkinses requested that their arbitration hearing (then scheduled for April) be postponed in light of recent information from the Department of Justice indicating that indictments would be handed down against several Donald & Co. principals and employees in the near future. In particular, the Adkinses' lawyers "suggested that the arbitration claim be left open in the event that proceedings in the criminal matter revealed pertinent information." *Adkins*, 125 Fed. Cl. at 309. In May 2004, an indictment was returned in the United States District Court for the Eastern District of New York against Volman, Ingrassia, Kozak, and others, charging conspiracy to commit securities fraud, securities fraud, and conspiracy to commit money laundering. In September and October of 2004, Volman, Ingrassia, and Stetson pleaded guilty, receiving sentences including imprisonment, supervised release, fines, mandatory restitution, and forfeiture. Proceedings against other Donald & Co. principals continued from 2005 to 2009.

While the criminal proceedings were pending, in 2006, the Adkinses attempted to recoup some of their losses by claiming a federal income tax deduction for theft loss under 26 U.S.C. § 165. Specifically, the Adkinses claimed a loss of $2,118,725 for tax year 2004, with excess refund portions carried back over the three previous years, 2001–2003. On December 12, 2008, the IRS disallowed the Adkinses' refund claims for all tax years but 2002.[1] The Adkinses protested at the IRS Office of Appeals, but thereafter filed suit in the Claims Court before their appeal was complete, removing the IRS's jurisdictional

---

[1] It appears that the 2002 portion of the claim was neither allowed nor formally denied, although no portion of the record offers an explanation as to why. Neither party, however, suggests that the treatment of the 2002 portion has any relevance to the issues now on appeal.

authority to settle the claim. After disposing of certain preliminary disputes via summary judgment, the Claims Court conducted a trial and concluded that the Adkinses were "not entitled to a theft loss deduction for the 2004 tax year." *Adkins*, 125 Fed. Cl. at 305. In particular, the Claims Court found that the Adkinses had failed to satisfy the requirements of 26 C.F.R. § 1.165-1(d)(3) (i.e., Treas. Reg. § 1.165-1(d)(3)), insofar as they had not shown that, in 2004, they could have "ascertained with reasonable certainty that they would not receive reimbursement of their losses." *Id.* at 317. The Adkinses timely appealed to this court.

## DISCUSSION

"The Claims Court's legal determinations, including interpretations of statutes and regulations, are subject to de novo review and its factual determinations are reviewed for clear error." *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1357–58 (Fed. Cir. 2015). On appeal, the Adkinses make essentially four arguments: (1) the Claims Court failed to correctly apply Treas. Reg. § 1.165-1(d)(3)'s test for determining the year in which a taxpayer can deduct a theft loss under 26 U.S.C. § 165; (2) even under the Claims Court's interpretation of Treas. Reg. § 1.165-1(d)(3), it improperly required abandonment of their arbitration claim; (3) the Claims Court failed to apply Revenue Procedure 2009-20 in this case; and (4) if 2004 was not the correct loss year, the Claims Court should have ruled in favor of the Adkinses under the mitigation provisions of Treas. Reg. § 1.1311(c), using 2003 as the loss year instead.[2]

---

[2]    In their opening brief, in a single footnote, the Adkinses also mention a Motion to Compel filed below that was denied:

First, we examine the requirements of Treas. Reg. § 1.165-1(d)(3):

> Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss (see § 1.165-8, relating to theft losses). However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a *reasonable prospect of recovery*, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be *ascertained with reasonable certainty* whether or not such reimbursement will be received.

(emphases added). In interpreting and applying this regulation, the Claims Court reiterated the conclusion reached by another Claims Court judge in *Johnson v. United States*, 74 Fed. Cl. 360 (2006). That is, although

---

> [We] were then prejudiced by the fact that the Trial Court failed to grant [our] Motion to compel discovery as [to] the contents of the Government's copies of the Donald & Company records and the investigative files of the Service in the criminal investigations and the case should be remanded for a new trial.

Appellants' Br. at 3 n.a. The Adkinses do not elaborate further on this contention or, indeed, provide *any* relevant legal authority or factual background. Because the disposition of a Motion to Compel is a matter "committed to the discretion of the trial court," the Adkinses' threadbare assertions are not a sufficient basis for this court to second-guess the Claims Court's reasoning. *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984).

other courts "tend[] to combine the 'reasonable prospect of recovery' inquiry and the 'ascertain with reasonable certainty' inquiry," the "two inquiries are distinct and the standards to be applied are different." *Adkins*, 125 Fed. Cl. at 318 (quoting *Johnson*, 74 Fed. Cl. at 365).

Put differently, under *Johnson*, the "reasonable prospect" language tolerates a greater probability of recovery than the "reasonable certainty" language. In practice, this means that plaintiffs are required to make a stronger evidentiary showing when attempting to claim their loss in any year subsequent to discovery. As the Claims Court stated in *Johnson*, for example, an "estimate" made by "lawyers and accountants may [be] sufficient to determine whether there was a 'reasonable prospect for recovery' in the year of discovery," but it would *not* be "sufficient to 'ascertain with reasonable certainty.'" *Johnson*, 74 Fed. Cl. at 366 (emphasis added). Because the Adkinses discovered their loss in 2002 and attempted to claim their loss in 2004, the Claims Court applied the higher, more stringent standard of "reasonable certainty"—and held that the Adkinses failed to meet that standard.

The Adkinses argue that Treas. Reg. § 1.165-1(d)(3), properly interpreted, does not set forth two different standards. Rather, Treas. Reg. § 1.165-1(d)(3) merely describes two sides of the same probabilistic coin: a "reasonable prospect for recovery" is the inverse of "reasonable certainty" that there will be *no* recovery.[3] That is, the test in Treas. Reg. § 1.165-1(d)(3) may be simplified as

---

[3] To put it in more explicit mathematical terms, we know that $P_{recovery} + P_{no\ recovery} = 1$. Let a "reasonable prospect" for recovery mean that $P_{recovery} \geq x$ for some probability $x$. The Adkinses argue that "reasonable certainty" of *no* recovery simply means that $P_{no\ recovery} > 1 - x$, so that $P_{recovery} < x$. The threshold probability in both inquiries is, therefore, identical: $x$.

follows: the proper year in which to claim a loss is the first year in which no reasonable prospect of recovery exists anymore, starting with the year of discovery.[4] Accordingly, the Adkinses suggest, they should not have been held to a stricter standard to claim their loss in 2004 than the standard to which they are held for 2002.

We agree with the Adkinses' interpretation of the regulation. Although few of our sister circuits have addressed this issue explicitly, those few who have appear to have reached the same conclusion. *See, e.g.*, *Vincentini v. Comm'r of Internal Revenue*, 429 F. App'x 560, 564 (6th Cir. 2011) (describing Treas. Reg. § 1.165-1(d)(3) as setting forth a single test, and describing that test as whether the claimant "demonstrate[d] with reasonable certainty that there was no reasonabl[e] prospect of recovery"); *Jeppsen v. Comm'r of Internal Revenue*, 128 F.3d 1410, 1414–17 (10th Cir. 1997) (using "reasonable prospect" and "reasonable certainty" language interchangeably); *Rainbow Inn, Inc. v. Comm'r of Internal Revenue*, 433 F.2d 640, 644 (3d Cir. 1970) (describing "the test" under Treas. Reg. § 1.165-1(d)(3) as "whether there was a reasonable prospect of recovery at the time the deduction was claimed"). We find no basis in the language of Treas. Reg. § 1.165-1(d)(3) to deviate from this straightforward and sensible approach.

This interpretation aligns, moreover, with common-sense incentives for victims of theft. Good-faith efforts to recover losses—such as lawsuits and arbitration—will tend to push the claim year later than the year of discovery by creating a probability of recovery. To the extent

---

[4] The test could be equivalently simplified as: the proper year in which to claim a loss is the first year in which it can be ascertained with reasonable certainty that there will be no recovery, starting with the year of discovery.

that it is rendered more difficult to succeed on a loss claim in years subsequent to discovery, taxpayers will be dissuaded from those good-faith efforts. Neither the government nor the Claims Court has explained why such a result possibly could have been intended by the Treasury Department.

Having addressed the proper application of Treas. Reg. § 1.165-1(d)(3), we turn next to the Adkinses' second argument—whether, under either interpretation of § 1.165-1(d)(3), the Claims Court additionally erred by treating abandonment of their arbitration claim as a prerequisite to a reasonable certainty of no recovery. Once again, we find the Adkinses' argument persuasive, and hold that the Claims Court so erred.

In reaching that conclusion, we begin with Treas. Reg. § 1.165-1(d)(2)(i), which provides elaboration on what constitutes "reasonable certainty" for purposes of § 1.165-1(d)(3):

> Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement is a question of fact to be determined upon an examination of all facts and circumstances. *Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim.* When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.

(emphasis added). The Adkinses contend that the Claims Court effectively treated the emphasized section above as an exhaustive list rather than a mere collection of examples. The Adkinses concede that their arbitration claim

with NASD was still pending in 2004; nevertheless, they argue that a holistic examination of the facts and circumstances as of that time demonstrates a reasonable certainty of no recovery. The Adkinses note in particular that, as of 2004, they had reason to believe that: (1) the government intended to seize any documentation concerning the identity and ownership of the defendants' assets, foreclosing independent investigation; (2) the government intended to seize all of defendants' discovered assets; and (3) the defendants had no chance of generating future assets given their plea agreements and debarments.

In its opinion, the Claims Court acknowledges at the outset that the list in the emphasized section above is "expressly designated as 'example[s],'" such that "a taxpayer is not precluded from ascertaining the viability of his claim in another manner." *Adkins*, 125 Fed. Cl. at 319. Because the Adkinses had a live arbitration claim, however, the Claims Court appeared to hold that abandonment of that claim became the *only* acceptable manner to ascertain viability:

> Although plaintiffs do not say so explicitly, the court—based on the facts adduced at trial, plaintiffs' arguments, and the relevant regulations— infers that it is plaintiffs' position that in 2004, they ascertained with reasonable certainty that they would not recover anything on their arbitration claim. The facts further reflect that plaintiffs did not arrive at this conclusion because they settled or litigated the claim, but instead came to believe that the claim was no longer viable because they would not be able to collect on it, and therefore stopped actively pursuing it. *In other words, notwithstanding their protestations otherwise, plaintiffs must be contending that they abandoned their arbitration claim.*
>
> . . . .

> [Thus,] the objective evidence in the record sup-
> ports two other abandonment dates: (1) 2003,
> when plaintiffs' arbitration attorneys requested
> that the NASD adjourn the scheduled hearing and
> when plaintiffs stopped paying their arbitration
> attorneys, or (2) 2008, when plaintiffs formally
> withdrew their arbitration claim. *Accordingly,
> plaintiffs have not met their burden of establishing
> that they sustained their theft loss in 2004.*

*Id.* at 320–21 (emphases added). That holding cannot
stand.

We read Treas. Reg. § 1.165-1(d)(2)(i) as setting forth
a general totality-of-the-circumstances standard, followed
by an alternative method for a plaintiff to demonstrate
that no reasonable prospect of recovery existed as of a
certain date. That is, rather than make their case under
the general "all facts and circumstances" standard, a
plaintiff may rely on the date that their arbitration or
lawsuit for the loss was settled, abandoned, or adjudicat-
ed. In the case of abandonment, because no dated court
order or settlement agreement exists, the plaintiff must
be able to provide some other form of "objective evidence"
as to when abandonment occurred. But even in cases
where the plaintiff *does* have a related arbitration or
lawsuit, we do not read Treas. Reg. § 1.165-1(d)(2)(i) as
precluding them from making their case under the more
general standard, should they so choose.

This court recognizes that the existence of a live
arbitration or lawsuit typically is at least probative evi-
dence of the potential for recovery. A plaintiff's decision
to incur the costs associated with maintaining such a
proceeding reveals something about their subjective
beliefs regarding the potential for recovery therein. But
the court must take into account what those costs actually
are. In this case, for example, the Claims Court noted
that "plaintiffs' arbitration attorneys took no action" after

2004 other than "requests for further postponements." *Adkins*, 125 Fed. Cl. at 320. The Adkinses, for their part, allege that they were no longer even paying their attorneys at this point. Where, as appears to be the case here, the associated maintenance costs are almost zero, the plaintiff's decision to keep the proceeding open tells the court exceedingly little about their beliefs as to the chances for recovery. No matter the odds, even a perfectly rational actor doesn't turn down a free lottery ticket.

Accordingly, unless the plaintiff has chosen abandonment (or settlement or adjudication) as the factual predicate for their loss date, the existence of an ongoing lawsuit or arbitration is only one factor to be considered among many—all facts and circumstances. Because the Adkinses did not so choose, we direct the Claims Court on remand to engage in this more holistic analysis, including additional factfinding as necessary.

Because we agree with the Adkinses that the Claims Court both misinterpreted Treas. Reg. § 1.165-1(d)(3) and improperly required abandonment of their arbitration claim, we need not reach their alternative arguments regarding Revenue Procedure 2009-20 and Treas. Reg. § 1.1311(c).

## CONCLUSION

For these reasons, the Claims Court's opinion and order dismissing the Adkinses' complaint with prejudice is vacated, and the case is remanded for further proceedings consistent with this opinion.

## **VACATED AND REMANDED**

### COSTS

Costs to appellants.